## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHER DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SCOTT RICHARDS | : | |
| | : | |
| Plaintiff, | : | Case No. _____ |
| | : | |
| v. | : | |
| | : | |
| WARNER MEDIA LLC, including | : | |
| its parent and successor in interest, | | : |
| WARNERS BROS. DISCOVERY | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendant | : | |
| | : | |
| | : | |

## VERIFIED COMPLAINT

## INTRODUCTION

This is an action for religious discrimination in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e et seq., on the grounds that Defendant, among other

things, discriminated against and failed to reasonably accommodate Plaintiff as a result of

Plaintiff's sincerely held religious objections to a mandatory COVID-19 vaccination policy.

In consequence, Defendant illegally terminated his employment.

## THE PARTIES

1.      Defendant, Warner Media, LLC ("Warner") is a Delaware for-profit

corporation with its principal office at 30 Hudson Yards, New York, NY, 10001. As of

this writing, it is registered with the Georgia Secretary of State and has listed as its

1

registered agent for service of process:

> CT CORPORATION SYSTEM
> 289 S Culver St.
> Lawrenceville, GA  30046

in Gwinnett County, Georgia.

2.      At all times relevant to this action, Plaintiff was an employee of Warner at its offices located 1020 Techwood Dr., NW, Atlanta (Fulton County) GA 30318-5604. Warner also had offices at 1 CNN Center, Atlanta (Fulton County), GA 30318.  Plaintiff was paid, however, by an entity providing services to Warner under the name of Turner Services, Inc., located at 3400 W Riverside Dr. Suite 550, Burbank, CA  91505.

3.      Upon information and belief, in April 2022—after Plaintiff was terminated from his position with Warner--Warner merged with Discovery, Inc. to form a new company named Warner Bros. Discovery ("Discovery").  Discovery is a global entertainment and media business having, upon information and belief, in excess of 37,500 employees globally.  Now, according to Defendant's counsel, Discovery is the parent company of Warner.

4.      Discovery now has its offices in what was the Warner offices at 1050 Techwood Drive NW, Atlanta (Fulton County), GA 30318- 5604, and, upon information and belief, is the successor in interest to all the relevant obligations and liabilities of Warner to Plaintiff.

5.      Upon information and belief, Discovery controls Warner and makes all decisions with regard to this lawsuit and other Warner matters. Thus, Warner and Discovery combined will be referred to herein as "Defendant."

6.      Discovery has no separate registered agent for service of process listed with the Georgia Secretary of State.

7.      Upon information and belief, Discovery is the successor-in-interest to Warner, and is responsible for any liabilities Warner may have to Plaintiff or others with respect to the illegal employment actions engaged in by Warner with regard to Plaintiff.

8.      Thus, Discovery may be served pursuant to OCGA § 14-2-1510 by sending process to its CEO ( David Zaslav), or its CFO or Secretary at its principle place of business in New York City at 230 Park Avenue South, New York, NY 10003, with a copy to the Georgia Secretary of State along with a $10 Fee, if its local counsel is unwilling to accept service of process.

9.      Plaintiff Scott Richards is a resident of Fayette County, Georgia, and at all relevant times worked for Warner at its Atlanta, Georgia offices.

## JURISDICTION AND VENUE

10.     This court has jurisdiction because Plaintiff's claims present important federal questions over which this Court has jurisdiction, at a minimum, under 28 U.S.C. § 1331,  42

U.S.C. §§ 2000e-5(f)(1) and (3) (Title VII), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, as well as the U.S. Constitution.

11,     Venue is appropriate in this court for all of Plaintiff's claims pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. §2000e-5(f)(3), because Defendant has offices in Atlanta, Georgia and thus resides in this judicial district; Plaintiff resides and worked in this judicial district at all relevant times; and all the events relating to his claims and damages took place here.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.     Plaintiff filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") detailing his charges of discrimination, failure to accommodate and retaliation under applicable laws. A true and accurate copy of the Charge, incorporated Charge Narrative, and Exhibits filed with the EEOC are attached hereto as Exhibit A and are incorporated herein.

13.     Plaintiff received from the EEOC on September 8,  2022 a Determination and Notice of Rights ("Right to Sue") providing Plaintiff the right to bring his claims to court within ninety (90) days of the date he received the Notice.  This Complaint is timely filed within this 90-day period, and Plaintiff has complied with all other conditions precedent to the institution of this lawsuit. A true and accurate copy of the Notice of the Right to Sue is attached hereto as Exhibit B and is incorporated herein.

14.    All conditions precedent to the institution of this lawsuit have been fulfilled.

**FACTS**

15.    Plaintiff was a loyal, hardworking, extremely competent  and respected employee of Warner for over seven and a half years, from April 28, 2014  until his termination right before Christmas on December 18, 2021.

16.    Plaintiff began his career with the Company on April 28, 2014, when he was hired as a Production Engineer.

17.    He moved his whole family to Atlanta from Baltimore, MD, not knowing a soul and having no family here, solely to accept the job invitation Defendant had made to him.

18.    Working diligently and faithfully in his position, he earned the title of Senior Broadcast IT Engineer in 2017 and continued in that role until his illegal termination on December 18, 2021.

19.    Plaintiff excelled in his position throughout his tenure, regularly earning positive feedback for his excellent work performance.

20.    Plaintiff earned $52.00 per hour ($120,000-$125,000 annually), as well as health, vision, dental and other benefits. In addition, he regularly worked overtime, sometimes earning up to $140,000 yearly.

21.    His supervisor during the time of the events in this charge was Andrue Netcher ("Mr. Netcher").

22.    Plaintiff has, and has had for many years, strong, sincerely-held Christian religious beliefs.  Specifically, he believes the Bible teaches that God created human beings in His image (Genesis 1:26-27). This means that human life is sacred, and God created the human body and its human immune system to function as he created it. The Bible also teaches and he believes that human life begins at conception (Psalm 139:13-16).  See the Plaintiff's Religious Accommodation Request submitted to Defendant attached as Exhibit E.

23.    As is well known to virtually all in the United States, if not the entire World, in March 2020, the World Health Organization announced that a virus known as COVID-19 had spread across the world and a world-wide pandemic was declared.

24.    Far from being viewed as "minor and transitory" like a cold, the flu or a sprained wrist, this Covid-19 virus was viewed and promoted widely as deadly and something to be greatly feared.

25.     In fact, it was so feared and allegedly deadly that the government forced people to stay in their homes and not go out except for emergencies, businesses were shut down, churches were not allowed to hold services, major sports and other events were halted, relatives were not allowed to be in the same room even when loved ones were dying alone in hospital beds, and other travesties resulted from the declared danger of the Covid-19 virus.

26.     Vaccine development is ordinarily a long, complex process, often lasting 10-15 years, and entails a combination of public and private involvement.[1]

27.     In 2020, to address and control the declared Pandemic, the COVID-19 vaccine was hastily developed.

28.     Notwithstanding the fact that Vaccine development and initial testing normally takes 10 to 15 years, the COVID Vaccine (known as the "COVID Vaccine," the "Vaccine," the "Vax" or the "Jab") was developed abnormally quickly and tested for only about two months.

29.     In fact, the Vaccines were put together as part of a program dubbed "Operation Warp Speed" —i.e., in record time-- and were unleashed on the public by the Federal Drug

---

[1] www.Historyofvaccines.org/vaccines-101/how-are-vaccines-made/vaccine-development-testin-and-regulation.

Administration ("FDA") pursuant to an Emergency Use Authorization ("EUA") and Department of Defense ("DoD") contracts in December 2020.

30.     Upon information and belief, no vaccine has ever been developed, tested, and authorized for even experimental use in such a short time period.

31.     The COVID Vaccine is well known to have been derived from aborted fetus cell lines.  This is undisputed.

32.     The FDA cannot legally issue an EUA unless there is no adequate, approved, and available alternative to the candidate product for diagnosing, preventing, or treating the disease or condition.[2]

33.     On December 11, 2020, the FDA distributed a press release announcing that it had issued an EUA for the Covid-19 Vaccine.  Notably, however, in this press release, it declared that,

> **"At this time, data are not available to make a determination about how long the vaccine will provide protection,** ***nor is there evidence that the vaccine prevents transmission of SARS-CoV-2 from person to person.***"

(Emphasis added.)

34.     Notwithstanding this clear declaration, an intense campaign by the Biden Administration and its media and other partners, including media giant Warner,  was

---

[2] FDA Guidance Document, https://www.fda.gov/regulatory-information/search-fda-guidance-documents/emergency-use-authorization-medical-products-and-related-authorities#criteria.  Notably, there were in fact other alternatives for treating the Covid Virus, like hydroxychloroquine and Ivermectin, but these alternatives were actively suppressed by the government and others seeking to sell large supplies of the Covid-19 Vaccine, including those amounts already purchased by the government prior to its EUA approval.

implemented to vastly promote vaccination with the experimental Covid Vaccine as the only acceptable mechanism to "stop the spread" of the Covid virus.

35.    Information about early treatment of symptoms and other mechanisms showing efficacy in the treatment of Covid (e.g., hydroxychloroquine and Ivermectin) were deliberately suppressed and maligned by the government and others in an effort to heavily promote the already purchased Vaccine.

36.    In fact, upon information and belief, the Vaccine was already developed and purchased, but not adequately tested, before the Pandemic was even declared.

37.    Even though it was known from the beginning that the Vaccine did not have any effect on the transmissibility of the Virus, the mass population in the United States, and indeed the World, was strongly encouraged by the Biden Administration and partners  to get the vaccine "not just for yourselves, but for your loved ones," for Grandma, for your co-workers.[3]

_____

[3] See Biden Remarks of 2021/04/21: "The vaccine can save your life. The second reason to get vaccinated is to protect your community, your family, your friends, and your neighbors.  Vaccines can save your own life, but they can also save your grandmother's life, your coworker's life, the grocery store clerk, or the delivery person helping you and your neighbors get through the crisis. Now, that's why you should get vaccinated." https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/04/21/remarks-by-president-biden-on-the-covid-19-response-and-the-state-of-vaccinations-2/   See also comments from Dr. Susan Garfield, chief public health officer for EY, https://www.uschamber.com/co/start/strategy/employee-vaccination-incentives.

38.     As part of an intentional and continued effort to promote the Vaccine, at first, employers of various sorts, private and public, were urged by President Biden to incentivize their employees to get the Vaccine injections.

39.     Incentives to get employees to take the Vaccine were in various forms by both government and private industry (e.g., cash, PTO and other incentives by private entities; tax breaks and cost reimbursements offered by the federal government at the direction of President Biden, as well as praise and recognition for public and private entities that encouraged and achieved high vaccination rates).

40.     The Vaccine is and was at all relevant times well known, or should have been well-known,  to both its promotors and its adversaries to be associated with serious medical hazards and death, including  myriad significant adverse health events and conditions.

41.     Information demonstrating the significant risk of the Vaccine was at all relevant times and is widely and publicly available online on US government websites, including the public websites of the Food and Drug Administration ("FDA"), Center for Disease Control ("CDC") and Health and Human Services ("HHS"), as well as other websites and publications of highly-credentialed private doctors, scientists, and other persons and entities. See, e.g.,  the Vaccine Adverse Event Reporting System ("VAERS"),

_____

found at, e.g., www.vaers.hhs.gov.[4]

42.     The government through President Joseph Biden, Anthony Fauci (Director of NIAID), other government officials and certain media, including Defendant,  aggressively in their broadcasts to the public tried during the relevant time period to inflate the risk (and fear) associated with the actual COVID-19 disease and minimize or mask the substantial risks associated with the Vaccine.

43.     In fact, the COVID-19 disease itself had a survival rate of approximately 98% or greater, depending on age and comorbidities, but the COVID-19 Vaccine had a **high risk** of causing serious, adverse medical events or death—**more than all of the vaccines kept track of on VAERS since 1990 _combined._** [5] This information was available on the FDA/CDC websites, and other public websites.

44.     Even while the FDA and Biden administration was hammering the mantra that the Vaccines were "safe and effective," the FDA/CDC was simultaneously keeping records and making publicly available VAERS information showing that the Vaccine was the most dangerous in history.

45.     Even more risk information has been revealed over time since 2021, including information only released due to successful Freedom of Information Act ("FOIA") and

---

[4] **See also,** https://openvaers.com/COVID-data and/or https://vaersanalysis.info/; Exhibit D, Declaration of Dr. Peter McCullough.
[5] Additionally, VAERS numbers showing serious adverse health events and deaths are widely recognized to be grossly underreported and could easily be 10X to 30X or higher than even those numbers listed. Some reports indicate VAERS reports represent only 1% of the actual adverse events.  Plaintiff will provide all appropriate reports verifying the facts asserted herein at the appropriate time.

other lawsuits against the FDA and/or the CDC, demonstrating that the Vaccines are and were extremely hazardous at the time Defendant was demanding that each of thousands of its employees inject  the Vax into their bodies or be fired.[6]

46.     In the Spring of 2021, just months after the FDA issued its press release stating that there was no data regarding the Covid Vaccine affecting transmission of the virus, Defendant distributed to its employees notice urging its employees to "Share your vaccination status" to "make this the safest comeback ever."  See Exhibit A: EEOC Filings Exh 1 to Charge Narrative, and Exh. 3 to EEOC Rebuttal [showing when Mr. Richards got notice of the Vaccine Mandate].[7]

47.     Defendant urged its employees to investigate COVID vaccines by supplying

---

[6] Consistent with the FDA December 11, 2020 Press Release announcing the EUA, It has been admitted by an official of Pfizer that the Vaccine was actually never developed or tested to curb the transmission of the COVID virus, despite post-distribution, intense government urging that getting the vaccine would stop to spread of the COVID virus, and thereby protect  fellow employees, friends and loved ones from catching the virus and becoming ill or dying. Media, government and other statements to the effect the Vaccine would stop the spread of the virus were and are false, and now there are more vaccinated with COVID are suffering and dying in hospitals and other places than unvaccinated patients.  It has been found that actually the Vaccine destroys one's immune system and thereby makes an individual more, not less, susceptible to catching COVID or other viruses and diseases.  Many other serious, adverse medical consequences of the Vaccine have also been confirmed since 2020, which will be demonstrated at trial, if necessary.  For what was known *prior to* Plaintiff's illegal termination, see, e.g., Declaration of Dr. Peter McCullough, a very highly credentialed doctor, who studied Covid-19, the Vaccine, and found multiple successful alternative treatments. His Declaration may be found in <u>Navy Seal 1 v. Biden</u>, Case No. 8:21-cv-02429, Doc 1-8, filed 10/15/21 (M.D. Fla. 2021), where a court found grounds to issue a preliminary injunction against the military for its Vaccine Mandate requiring all military personnel to be vaccinated with the hazardous Covid Vaccine.  Note that this information was known, and this Declaration was filed, *before* Warner terminated Plaintiff on December 18, 2021. Among multiple other statements of value, Dr. McCullough explains in his Declaration that, "the epidemic spread of COVID-19, like all other respiratory viruses, notably influenza, is driven by symptomatic persons; **asymptomatic spread is trivial and inconsequential**."  Id. page ID 180, ¶9.  See, e.g.,  Exhibit D.

[7] The "story" of what has happened in this case is laid out in the Exhibit A, EEOC Filings exhibit here incorporated.  A review of same will help the reader understand the full story of this matter.

links to various government (U.S., UK, Canada, and WHO) links about the Covid

Vaccination, but did not include any links to the adverse event information published by the

FDA/CDC/HHS re VAERS or other sites with relevant risk information. Id.

48.     Notwithstanding the fact that the FDA published communications showing

that there was no data suggesting that the Vaccines prevented the transmissibility of the

virus, and even though there was significant data published showing extensive adverse

events  affiliated with the Vaccine,  in July 2021 Defendant transmitted to some of its

employees (but not all, and inexplicably not initially to Plaintiff) notice that "We are

mandating vaccines for U.S. employees whose jobs require them to work in WarnerMedia

workplaces." Exhibit A, EEOC filings, EEOC Charge Narrative, Exh. 1 [Plaintiff's Email

and banner communications].

49.     However, the policy was not to be uniform, and each department was to make

decisions based on its circumstances, with the goal being to have everyone back in the

office by the end of 2021.  However, Defendant's policy was to "ensure that our Turner

Sports, Bleacher Report and Studios floors and office spaces will have *only vaccinated*

*people using them*."  See Exh. A, EEOC Charge Narrative, Exh. 1 [Plaintiff's Email and

banner communications]. However, "other divisions of WarnerMedia will not all be

instituting the fully vaccinated requirement.  Therefore, you may find yourself in contact

with other non-sports and studios employees who may not be vaccinated in shared spaces,

such as cafeterias or common areas."  Id.

50.   Plaintiff received this notice in August 2021, and only then because he asked for any policy the Company had regarding the Covid Vaccine as he was notifying the Company that he was experiencing a hostile work environment with other employees making undesirable comments and assumptions about his unvaccinated status, making his environment uncomfortable and casting him as a pariah due to his religious beliefs prohibiting this Vaccination.

51.   Defendant apparently recognized its legal need to offer a medical or religious accommodation, notwithstanding  its declared intent to "ensure that our Turner Sports, Bleacher Report and Studios floors and office spaces will have *only vaccinated people using them*"[8] and said it would use its "best efforts" to do so, on a case-by-case basis.  Id.

52.   On August 17, 2021, Plaintiff submitted his religious accommodation request ("Request"), explaining the religious basis for his not being able to take the Vaccine:

> The Bible teaches that God created human beings in his image (Genesis 1:26-27). This means that human life is sacred, and God created the human body and its human immune system to function as he created it. The Bible also teaches that human life begins at conception (Psalm 139:13-16).
>
> Therefore, abortion is the taking of a human life and is murder and forbidden by God (Exodus 20:13). The COVID-19 vaccines use fetal cell lines from aborted babies in a part of the process of their creation and development which violates God's will against abortion as described above. The COVID-19 vaccines also interfere with the function of the human immune system which God created by inserting genetic code instructions into the cell that does not

---

[8] See paragraph __, supra.

originate from the DNA in the cell. Therefore, this process violates God's will for humanity.

He also explained:

> For Christians, all of our religious beliefs are based on the Bible. The Bible reveals to us what God's will is and we are committed to believing it and following it on a daily basis. As in all my beliefs, I live by them and express them to others. Also, it has caused me not to receive the COVID19 vaccines.

See Exhibit A, EEOC Filings, Charge Narrative, Exh. 2.

53.    Plaintiff also noted in his Request the successful safety record Defendant had already experienced in his area using the procedures all had used for 18 months prior to the Vaccine Mandate, and explaining that:

> "remote work accommodations will help ensure the company's safe and healthy workplace. Also, continuing the current approach of mask/gloves wearing and social distancing when on site would also ensure a safe and healthy work environment for others and myself."

See Exhibit E.

54.    Although the HR system through which Plaintiff submitted his Request indicated Plaintiff could expect a response within 24 hours, no such response was timely forthcoming.

55.    In fact, Plaintiff and his wife and his children waited in anxious uncertainty week after week, then month after month to get an answer, in fear Defendant would refuse accommodation and they would have inadequate support for their essential needs.

56.     Plaintiff diligently attempted to get information from his supervisor and from the Warner HR department to which he was directed about his requested accommodation, but repeatedly no real information was provided.

57.     At various times during this unbearable process, including when he first learned of the Vaccine Mandate, Plaintiff brought to HR's and management's attention that he felt the Vaccine mandate was discriminatory, that he was being discriminated against, and that the mandate, was unconstitutional and a violation of Plaintiff's civil rights. See, e.g.,  Exhibit F (Emails and other communications between Plaintiff (Scottee) and his supervisor and HR[9]).

58.     Plaintiff's reported concerns of discrimination, hostile work environment, and related illegal actions are protected speech.

59.     At no time did anyone discuss his concerns that the Vaccine and the Company's treatment of him was discriminatory or otherwise illegal.

60.     Despite law requiring it, at no time did anyone sit down with or have a telephone call with Plaintiff  in which there was an interactive discussion with the purpose of developing ways he could be reasonably accommodated given his sincere religious beliefs that prohibited him from submitting his body to the Vaccine Mandate.

---

[9] These are also found in Exhibit A, EEOC Filing, Exhibits

61.    It was obvious from Company announcements made and his own observations that myriad people were allowed to continue working in Warner offices even though they were unvaccinated.

62.    Not all Company personnel were subject to the Vaccine Mandate.

63.    For example, with regard to Vendors and Contractors, Warner stated that "We are not able to mandate the vaccine for employees of vendors or some Union represented employees….In some limited cases, based on the nature of the service provided and the contract with the vendor, we may not have the ability to influence the vaccine status of these individuals. In addition, others over whom we have no control provide critical business operations services, e.g. postal service, fire/police, phone service providers, etc., at our facilities daily. Such individuals are asked to provide their vaccination status, and, if they choose not to share, are considered unvaccinated and must wear a mask and always maintain social distancing."

64.    It was also obvious to Plaintiff, and should have been obvious to Defendant, that Plaintiff could do his job using the same safety protocols he had used for months, and that Defendant was allowing others with similar low-interaction-with-others positions.

65.    Unquestionably, Defendant was able to accommodate Plaintiff's religious beliefs without a substantial hardship to the operations of its business, as it is required to do by law.[10]

---

[10] See **Groff v. DeJoy**, **600 U.S.** 447 (June 29, 2023).

66.     Plaintiff also, after discussing it with and agreeing with another employee who was vaccinated, suggested to his supervisor that this other employee was willing to cover Plaintiff's night shifts on the rare occasions when Plaintiff's office presence was necessary.

67.     Plaintiff when not working remotely always worked night shifts when few employees were around.

Plaintiff's supervisor just said no, without explanation or providing other alternative suggestions.

68.     Plaintiff's supervisor at the start of the Pandemic was permitted to relocate to Florida. Plaintiff's supervisor was being accommodated to work remotely and is currently still being accommodated.

69.     Plaintiff at all times was quite willing to continue the social distancing, masking, or testing options that had been adequate for 18 months and that myriad other unvaccinated contractors, vendors, union employees and others who did not request religious exemptions were permitted to do to perform their jobs on the Warner properties.

70.     Finally, on November 2, 2021, Defendant responded by email to Plaintiff's request for religious exemption to the Vaccine Mandate.  Defendant denied Plaintiff's Request for Accommodation, determining that [even though Plaintiff's role was successfully being performed remotely and another vaccinated employee was willing to cover any responsibilities requiring the rare interactions with others on the office premises] "the essential functions of your role cannot be performed remotely" and "allowing an

unvaccinated employee to provide services in your role in our facilities and workspaces would present an undue hardship operationally."

71.    Despite Plaintiff sending multiple emails to the Company attempting to determine the meaning of "undue hardship," no definitive information was provided.  One such uninformative response explained, "While the company considers possible ways to accommodate *certain employees* who can't be vaccinated, it does not need to do anything that puts an unnecessary burden on the company." See Exhibit F, Nov 11, 2021 12:16 pm email to Plaintiff from Kristopher Williams.

72.    Thus, effective December 18, 2021, Plaintiff's 7+ year career was terminated.

73.    Plaintiff knows of no employee who was granted a religious accommodation, and upon information and belief, believes none were granted.

74.    Plaintiff knows of no employee who was granted a medical accommodation.

75.    Plaintiff,  who was not sick with Covid or other malady, could have been accommodated in the same way Defendant accommodated contractors, vendors, Union employees and others who did not request a religious accommodation but needed to work on the Warner office premises during the Covid declared Pandemic.

76.    Plaintiff was terminated because he refused to violate his faith by injecting into his body a substance that violates his sincere religious beliefs—specifically, the Covid-19 vaccine, which is derived from aborted fetal cells.

77.    Among other illegal actions, Defendant discriminated against Plaintiff due to his religious beliefs for refusing the Vaccine Mandate.

78.     Among other illegal actions, Defendant retaliated against Plaintiff for requesting a religious exemption and for engaging in protected speech.

79.     Among other illegal actions, Defendant made Plaintiff suffer a hostile work environment due to his religious beliefs and their requirement that he not submit himself to injection of a religiously despicable, experimental drug derived from aborted fetal cells, i.e., the Covid Vaccine.

80.     Among other illegal actions, Defendant failed to have an interactive discussion with Plaintiff in an effort to determine a workable accommodation to enable Plaintiff to remain employed.

81,     Among other illegal actions, Defendant failed and refused to accommodate the religious beliefs of Plaintiff, even though it could have done so without undue hardship just as it accommodated many others who were unvaccinated but who did not request a religious exemption.

82.     Defendant also certainly did not treat its vaccinated employees in the discriminatory way Plaintiff was treated and did not or impose adverse actions against them, expose them to a hostile environment, or terminate them.

83.     These adverse actions Plaintiff endured was because of his religion and its requirements.

84.   Certainly other reasonable employees observing how Plaintiff was treated would be dissuaded from making or supporting their own claims for religious accommodation or religious discrimination.

85.   Freedom of religion is a bedrock upon which the United States of America was founded.  See, e.g., 22 U.S.C. § 6401.  Defendant had a duty to accommodate Plaintiff's sincere religious beliefs in the workplace, but intentionally failed and refused to do so, casting the importance of Plaintiff's religion and faith in God below the level of accommodating vendors, contractors, Union employees and others *not* professing rights to practice their religion by rejecting the religiously-abhorrent Covid Vaccine.

## CAUSES OF ACTION

## <u>VIOLATIONS OF TITLE VII</u>
### <u>Religious Discrimination, Disparate Treatment, Hostile Work Environment, Failure to Accommodate, and Retaliation</u>

86.   Title VII precludes Defendant from discriminating or retaliating against Plaintiff on the basis of his religious beliefs or related protected activity.

87.   Title VII specifically requires Defendant to provide Plaintiff a reasonable accommodation if the tenets of Plaintiff's religion conflict with Defendant's policy so as to enable him to continue working, as long as it does not cause Defendant substantial hardship to the operation of its business.

88.   Religious beliefs are so important, Title VII contemplates and requires that

Defendant and Plaintiff engage in an interactive discussion in order to develop an accommodation that will allow Plaintiff to continue his employment in a way that does not conflict with his religious beliefs.

89. Title VII also demands that Defendant treat equally comparable employees.

90. Upon information and belief, the political environment at the time and its relationship with government actors encouraged Defendant to exhibit hostility to and discriminate against employees like Plaintiff who had religious beliefs that prohibited them from taking the Vaccine.

91. President Biden attempted illegally to compel via OSHA all large corporations of 100+ employees to Mandate the Covid Vaccine. [11]

92. Along with and in partnership with Defendant, Biden fostered a hostile environment to religious beliefs and the law preserving Plaintiff's and other employees' religious entitlements by, among other things, publicly demonizing the unvaccinated, repeatedly blaming "The Unvaccinated" for the country's woes, and calling the Covid virus spread "The Pandemic of The Unvaccinated."

93. Along with Defendant, President Biden sanctioned frustration against and "losing patience with" The Unvaccinated.  As Biden stated to the entire country, e.g.,

---

[11] See Nat'l Fed'n of Indep. Bus. v. Dep't of Labor, 142 S. Ct. 661 (2022); BST Holdings, LLC v. OSHA, 17 F.4TH 604 (5TH (Cir. 2021)_____

"Many of us are frustrated with the nearly 80 Million Americans who are still not vaccinated, even though the vaccine is safe, effective, and free….This is a pandemic of the *unvaccinated*…nearly 80 million Americans…have *failed* to get the shot.**[12]**

94.    Emphasizing that "Unvaccinated people spread the virus" [13] Biden demonized the unvaccinated and made them an object of hate and ridicule.

95.    As Biden said in public speeches broadcast by Defendant via CNN:

"The vast majority of Americans are doing the *right thing*.  [That nearly 80 million is a **25 percent minority**.]  That 25 percent **can cause a lot of damage—*and they are*.**"

"***The unvaccinated* overcrowd our hospitals,** are overrunning the emergency rooms, and intensive care units, l**eaving no room for someone with a heart attack, or [pancreatitis], or cancer…."**

"But what makes it i***ncredibly more frustrating*** is that we have the tools to combat COVID-19, and a distinct *minority* of Americans—supported by a distinct minority of elected officials—**are *keeping us from turning the corner*…."**

"This is not about freedom or personal choice…."

---

[12] President Biden's Remarks 9/9/21: https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/09/09/remarks-by-president-biden-on-fighting-the-covid-19-pandemic-3/

[13] President Biden's Remarks 7/29/21: https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/07/29/remarks-by-president-biden-laying-out-the-next-steps-in-our-effort-to-get-more-americans-vaccinated-and-combat-the-spread-of-the-delta-variant/

"The Department of Labor is developing an emergency **rule to require all employers with 100 or more employees, that together employ over 80 million workers, to ensure their workforces are fully vaccinated or show a negative test at least once a week.**"

"The bottom, line:   _**We're going to protect vaccinated workers from unvaccinated co-workers…..**_"

**"If you want to do business with the federal government,** _**vaccinate your workforce….**_**"**[14]

"The Department of Labor will require employers with 100 or more workers to give those workers paid time off to get vaccinated….."

96.   Biden blamed the unvaccinated for putting at risk frontline, essential workers, along with everyone else who was vaccinated.

97.   Upon information and belief, there was no change in the December 11, 2020 EUA press release from the FDA regarding the fact that there was no data indicating the Vaccine had any effect on transmissibility.  So Biden's statements to the effect that getting vaccinated would protect co-workers and loved ones from getting sick was false.

98.   And Defendant's Vaccine Mandate to "stop the spread" and prevent transmission of the virus was baseless.

99.   In fact, consistent with the FDA Press Release concerning the EUA, Pfizer Official J. Small admitted to the European Parliament that Pfizer had never tested for whether the Vaccine protected the recipient from transmitting the Covid virus, nor did it

---

[14]

protect those around the Vaccine recipient from receiving the virus.

100.    In fact, upon information and belief, Pfizer was never required by the government to determine whether the vaccine affected or protected against transmissibility of the virus.

101.  Title VII also prohibits Defendant from discriminating against Plaintiff, retaliating against Plaintiff because of his religion or protected activity, denying him benefits like others comparable to him receive, and from creating a hostile work environment because of his religion and/or accommodation request.

## COUNT I.
## DISCRIMINATION BECAUSE OF PLAINTIFF'S RELIGION

102.    Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if fully set forth herein.

103.    By having sincerely-held religious beliefs that require protection under Title VII, Plaintiff is in a protected class.

104.    Plaintiff informed Defendant of his sincerely-held Christian beliefs and that they conflicted with the Company's Vaccine Mandate.

105.    Defendant has never challenged the sincerity of Plaintiff's religious beliefs, and indeed, there is no basis for doing so.

106.   Plaintiff was an excellent, highly competent employee and,  but for his religion and its requirements, was valued and needed to do the work he did for Defendant.

107.   Plaintiff would have retained his position with Defendant but for the necessity of following his faith and Defendant's lack of respect for it.

108.   By terminating Plaintiff for failing to abdicate his religious beliefs by taking the Mandated Covid Vaccine, Defendant discriminated against Plaintiff and caused him severe distress and damage.

109.   By ripping from him his lengthy career and means to support his family, Defendant caused Plaintiff and his family to suffer significant damages as will be shown in detail at trial.

110.   Title VII recognizes and provides compensation for the type of damages Plaintiff suffered.

111.   Plaintiff is entitled to these damages, and Defendant is liable for them, at a minimum, under, Title VII.

112.   As a result of Defendant's intentional discrimination against him due to his religious beliefs, Plaintiff and his family suffered enormous damages, anxiety, mental anguish, gut-wrenching uncertainty and fear compensable under the law in an amount to be demonstrated at trial.

## COUNT II
## DISPARATE TREATMENT

113.   Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if fully set forth herein.

114.   Plaintiff treated others who had important work on Defendant's premises differently and better than it treated Plaintiff because of his religious beliefs.

115.   Defendant allowed others with similar interaction requirements and similar levels of responsibility to work on Defendant's premises without vaccination and/or without providing written proof of vaccination.

116.   Defendant also allowed all those not having a religious objection to its Vaccine requirement and who got the vaccine to continue working in Defendant's offices as always.

117.   Upon information and belief, no employee who worked on Defendant's premises was fired except for those who had religious or medical objections to injecting the Vaccine.

118.   Defendant treated those with religious objection to the Vaccine who sought an exemption or accommodation to the Vaccine Mandate, including Plaintiff, worse

than all its similarly situated employees who had no interfering religious beliefs and complied with the Vaccine Mandate.

119.   Plaintiff had a counterpart named Larry Gilbert who had essentially the same job as Plaintiff and he, like Plaintiff, also worked night shifts when few people were around.

120.   Plaintiff's comparator co-worker Mr. Gilbert was willing to take care of Plaintiffs nighttime, onsite responsibilities so Plaintiff could continue working without vaccination.

121.   Such arrangement would not have caused Defendant a substantial hardship or burden.

122.   Defendant's supervisor knew of Plaintiff's religious objection to the Vaccine and that he would be fired if he did not take the Vaccine but refused to allow this workable accommodation.

123.   Defendant retained Mr. Gilbert, who did not object to the Vaccine, and intentionally terminated Plaintiff because of his religious objection to the Vaccine.

123.   Plaintiff had his career for which he moved to Georgia ripped from him for failing to comply with the Vaccine Mandate because of his sincere religious beliefs.

124.   Plaintiff and his family have suffered significant damages as a proximate  result of Defendant' disparate treatment and intentional discrimination against Plaintiff solely because of his religious beliefs and requirements.

125.   Plaintiff is entitled to recover all damages provided under Title VII in an amount to be demonstrated at trial.

## COUNT III
## HOSTILE WORK ENVIRONMENT

126.   Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if fully set forth herein.

127.   Defendant set forth on an electronic banner on April 12, 2021[15] the following:

> **"Help make it the safest comeback ever. <u>Share Your Vaccination Status</u>.  We're in this together. Getting the vaccine helps protect you and those around you. Reporting that you are fully vaccinated is required to access WarnerMedia's United States offices (starting on Sept. 6, 2021)."**  Emphasis added.

128.   By making this and similar declarations to Defendant's employees, Defendant divided its employees into two categories:  the favored Vaccinated Group, and the disfavored Unvaccinated Group.

---

[15] See Exhibit A, EEOC Filings and Exh. 2 therein, which includes communications between Plaintiff and Defendant.

129.   Early after learning of this Vaccine Mandate, Plaintiff advised his management that he believed the Vaccine Mandate discriminated against him due to his religion and violated his Constitutional rights.

130.   Plaintiff suffered a hostile work environment as other employees guessed that he was unvaccinated because of his religious beliefs and spread this information among other employees to promote hostility, division and derision toward Plaintiff.

131.   As being unvaccinated was a derogatory status, especially because Plaintiff was unvaccinated because of his Christian religious beliefs, Plaintiff suffered the derision of being on the "wrong" Unvaccinated side in what President Biden declared, and what Defendant apparently adopted,  as "the Pandemic of the Unvaccinated" and the false implication that the "Vaccinated needed to be protected from the Unvaccinated."

132.   This division caused hostility and discomfort for Plaintiff in the workplace and was severe and pervasive, and objectively and subjectively altered the terms and conditions of his employment.

133.    This hostile treatment resulted in his fear and reluctance to be at and to do his job around these employees.

134.   This hostility and discomfort manifested in myriad ways:

- Plaintiff endured a Public announcement of his assumed unvaccinated status by one of his  teammates in a shared workspace among other teams who had recently returned to the workplace.
- Plaintiff no longer had one-on-one meetings with his manager, leaving him feeling ignored, dismissed, outcast.
- Plaintiff was no longer assigned any projects, leaving him feeling even more ignored, dismissed, outcast.
- HR ignored his report of the hostile work environment he was experiencing, leaving him feeling even more ignored and dismissed, and that no one cared.
- Other teammates, besides Larry Gilbert, no longer communicated with Plaintiff, leaving him feeling isolated and segregated.
- Plaintiff was constantly in fear of other coworkers starting an altercation, assuming his unvaccinated status and reacting with verbal or worse hostility.
- Plaintiff was highly anxious and extremely stressed about  how he would provide for his family, including a wife and three children, as Plaintiff was and still is their sole provider.
- Plaintiff was terrified of losing his health benefits for his family of five.

135.   Plaintiff alerted HR to this hostility and abuse on August 11, 2021 at 4:09 pm, as well as August 19, 2021 at 3:19pm, where he relayed to HR that he had discussed this hostility with his manager and was advised to follow up with HR.[16]

---

[16] See Exhibit A, EEOC Documents, Plaintiff's Rebuttal, Exh. C. See also <u>Nature</u>, December 8, 2022 Bor, A., Jørgensen, F., & Petersen, M. B. (2023). **Discriminatory attitudes against unvaccinated people**

136.   Although Plaintiff followed up with HR, nothing was done to adequately rectify the pariah treatment and harassment Plaintiff was experiencing due to his religious beliefs and consequent unvaccinated status.

137.   President Biden's discriminatory and inciting speeches of, e.g., 7/29/21 and 9/9/21,[17] which demonized, ridiculed  and categorized The Unvaccinated as a separate disfavored group were apparently concurred with and/or adopted by Defendant and/or its employees.

138.   Title VII prohibits a hostile work environment like the one Plaintiff suffered.

139.   Defendant could have investigated and eliminated the hostile work environment Plaintiff suffered, but it did not.

140.   Plaintiff suffered continuous mental anguish and other discomfort and harassment caused and tolerated by Defendant as a result of his religious beliefs and consequent refusal to take the Vaccine  altered in a negative way the terms and conditions

---

**during the pandemic.** *Nature*, *613*(7945), 704-711, https://doi.org/10.1038/s41586-022-05607-y (henceforth, the "Study")
which found that: "Discriminatory attitudes towards unvaccinated individuals is as high or higher than discriminatory attitudes directed towards other common diverse targets of prejudice including immigrants, drug-addicts and ex-convicts."

[17] See https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/07/29/remarks-by-president-biden-laying-out-the-next-steps-in-our-effort-to-get-more-americans-vaccinated-and-combat-the-spread-of-the-delta-variant/ and https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/07/29/remarks-by-president-biden-laying-out-the-next-steps-in-our-effort-to-get-more-americans-vaccinated-and-combat-the-spread-of-the-delta-variant/

of his employment by causing him to experience significant anxiety, depression, angst and fear when contemplating coming in to Defendant's offices to do his job.

141.    Defendant has direct or vicarious liability for this treatment and its failure to adequately correct it.

142.    Plaintiff suffered damages compensable under law for this hostile work environment, the nature and extent of which will be demonstrated at trial.

## COUNT IV
## FAILURE TO ACCOMMODATE PLAINTIFF'S RELIGIOUS BELIEFS/FAILURE TO HOLD INTERACTIVE DISCUSSION

143.    Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if fully set forth herein.

144.    Title VII imposes an affirmative obligation on an employer to attempt to reasonably accommodate an employee's religious beliefs and practices if it can do so without **substantia**l *hardship* to the conduct of its business.[18]

145.    Title VII also contemplates that the Plaintiff and the Defendant will engage in an interactive discussion for the purpose of developing a reasonable accommodation that would allow Plaintiff to remain employed.

---

[18] <u>Groff v. DeJoy,</u> 600 U.S. 447 (June 29, 2023).

146. While Plaintiff attempted to have an interactive discussion and attempted to propose accommodations that were workable, would not result in unsafe conditions, and would not be a substantial hardship to Defendant's business, Defendant would not have such an interactive discussion and merely refused Plaintiff's suggested accommodations, coming up with no accommodation other than "find another job that does not require Vaccination."

147. "Find another job" does not constitute a reasonable accommodation.

148. Denying a proposed accommodation does not constitute the required interactive discussion.

149. In denying Plaintiff's requested accommodation, Defendant asserted it would cause an "undue hardship" to operations. See Exhibit A (EEOC filings), Plaintiff's EEOC Charge, Exh. 4, Email from Kristopher Willams to Plaintiff, Nov 4, 2021 12:26 pm.

150. Defendant admitted in this same communication that, "it may have been possible for this work to be done remotely when no other options were available [but] this is not a remote position." Id.

151. If the work can be done remotely, it can be done remotely, whether other options are available or not.

152. To provide a religious accommodation, Defendant was required to bend or even break rules if necessary where the job could still be adequately done. Thus, the fact

that it is "not a remote position" does not save Defendant from its obligations to accommodate.

153.   Despite Plaintiff's multiple requests to explain exactly what was meant by "undue hardship," no adequate clarification was provided to him.

154.   Indeed it became apparent in Defendant's EEOC Position Statement that Defendant was using the incorrect "de minimis" standard to determine an "undue burden." That misapplied standard states, in these circumstances, that the importance of accommodating a religious belief is so little import that it can be denied if only **trivial** inconvenience or hardship would result from an accommodation.

155.   The Groff v. DeJoy Supreme Court case decided on June 29, 2023— after Defendant filed its Position Statement with the EEOC—declared that the "de minimis" standard used for decades by employers attempting to escape obligations to accommodate religious beliefs was *wrong* and had been the result of a misinterpretation of an earlier Supreme Court case, Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977).

156.   The Groff v. DeJoy Supreme Court decision issued June 30, 2023 clarified that, far from a showing that an accommodation would cause a de minimis or trivial burden, the defendant employer was required *to prove* that that any accommodation of the employee's religious beliefs would cause a ***substantial hardship*** to the operation of the employer's business.

157.   Defendant has been using the wrong standard to deny accommodations of religious beliefs when it was evaluating Plaintiff's request for accommodation.    This Groff standard was, however, in case authority prior to the June 29, 2023 holding in Groff v. DeJoy.  See, e.g., Adeyeye v. Heartland Sweeteners, 721 F.3d 444 (7th Cir. 2013) mentioned positively by the Supreme Court in its June 29, 2023 Groff decision and also in Plaintiff's EEOC filings, Exhibit A.

158,   Accommodating Plaintiff would not have caused substantial hardship to Defendant's business.

159.   Plaintiff's religious beliefs could have been adequately accommodated as evidenced in part by the fact that he was able to work entirely remotely for 18 months with no appreciable or negative impact on the performance of his duties or the business itself.

160.   Plaintiff's religious beliefs could also have been adequately accommodated by allowing him to share responsibilities or shifts with his comparator coworker, Larry Gilbert.

161.   Defendant refused to provide Plaintiff any accommodation whatsoever and, due to his religious beliefs which prohibited his compliance with the Vaccine Mandate, Defendant unfairly and illegally terminated him and thus ended what otherwise was likely to be a lengthy and successful career with Warner and its successors.

162.   By failing and refusing to accommodate and/or engage in a meaningful interactive discussion with Plaintiff, Defendant has violated Plaintiff's rights to practice his

religion as protected by Title VII and other laws and has caused Plaintiff severe and ongoing damages.

Defendant is liable for all damages it has caused Plaintiff by its unlawful actions, including without limitation, the attorney fees Plaintiff has been forced to incur to bring this action.

## COUNT VI
## RETALIATION

163.   Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if fully set forth herein.

164.   By terminating Plaintiff, subjecting him to a hostile work environment, and by refusing to accommodate his sincerely-held religious beliefs, Defendant retaliated against Plaintiff for engaging in protected speech in describing to management the discriminatory nature of the Vaccine Mandate, and for claiming a religious exemption in an environment that did not respect his religious beliefs.

165.   Defendant's discriminatory and retaliatory actions were intentional and designed to ensure as few people as possible had the boldness to claim a religious exemption to the Mandated Vaccine.

166.   Indeed, any reasonable person observing Defendant's response to Plaintiff's request for accommodation from the Vaccine Mandate likely would be hindered and afraid

to make such a request based on his/her own religious beliefs for fear he/she would be treated as horribly as Plaintiff was.

167.   Defendant never once questioned the sincerity of Plaintiff's beliefs, which were in fact utterly sincere, but nonetheless refused to accommodate them, or even discuss them in the context of an interactive discussion, as is required by Title VII.

168.   Defendant, for all the above reasons, is liable to Plaintiff for all his damages in an amount to be proved at his requested Jury Trial.

**WHEREFORE,** Plaintiff demands a Jury Trial and respectfully urges the court to grant the following relief:

(a) Enter judgment on all counts in favor of Plaintiff and against Defendant;

(b) Award Plaintiff all damages he has suffered as a result of Defendants' conduct and violations of law, including without limitation, all he is entitled to via applicable law in an amount to be determined by the jury;

(c) Award punitive damages as appropriate in an amount sufficient to punish Defendant for its violations of Plaintiff's rights and the damage it has caused to his entire life,  and to ensure this type of conduct ceases and will not occur again;

(d)   Award all reasonable attorney fees and costs Plaintiff has had to incur in trying to enforce his rights and in bringing this action;

(e)   Award any and all additional or other relief this court believes is just and

proper.

Respectfully submitted this 6th day of December 2023.


HIPES LAW LLC


*s/Jeanne Bynum Hipes*

Jeanne Bynum Hipes
Ga. Bar No. 100575
Counsel for Plaintiff

Hipes Law LLC
2475 Northwinds Parkway
Suite 200
Alpharetta, GA  30009
PH:  678-867-7006
FAX:  770/783-5010
EMAIL:  counsel@hipeslaw.com

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(D)

This is to certify that the forgoing **VERIFIED COMPLAINT** was prepared using

Times New Roman 14 point font in accordance with Local Rule 5.1(C).

*s/Jeanne Bynum Hipes*

Jeanne Bynum Hipes
Ga. Bar No. 100575
Counsel for Plaintiff

# EXHIBITS TO VERIFIED COMPLAINT

In <u>Scott Richards V. Warner Media LLC/</u>
<u>Warner Bros. Discovery</u>

A. EEOC Filings by Plaintiff
B. EEOC Right to Sue
C. FDA Dec. 11, 2020 Press Release re EUA
D. Declaration of Peter McCullough
E. Religious Accommodation Request
F. Email communications between Plaintiff and Warner personnel (Also Exhibit 4 to EEOC Charge Narrative (found in Exhibit A, EEOC Filings)
G. Email communications between Plaintiff and Warner personnel attached to Exhibit A, EEOC file of Richard's Rebuttal to Defendant's Position Statement. Exh. C.