UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

|  |  |  |
|---|---|---|
| SCOTT RICHARDS, | : | CASE NO. 23-cv-05587-JPB-CCB |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| WARNER MEDIA LLC, including its parent and successor in interest, WARNER BROS. DISCOVERY, | : | |
|  | : |  |
|  | : |  |
| Defendant. | : |  |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant's Motion to Dismiss should be denied. Plaintiff Scott Richards, through counsel, hereby shows why:

**PRELIMINARY STATEMENT**

Defendant, like many employers during the last few years since the Covid-19 pandemic commenced in March 2020, seeks to dissect and destroy Plaintiff's request for a religious accommodation in a manner rarely contemplated or permitted by courts in the past. Indeed, religious beliefs and practice as expressed in normal ways by employees in America were accorded an appropriate respect and a "hands off" attitude by the courts, as it was recognized how personal, precious and how private an individual's religious beliefs are. It was, after all, religious beliefs and a fervent desire to escape persecution for their religious beliefs that led our forefathers to escape the torment in their overseas homes and churches and, enduring great danger and hardship, to establish this country upon principles of religious freedom.

Defendant would have this court believe that, "No more"--religious beliefs are to be respected and protected *no more*. However, thankfully for the country, this simply is not so. Under Title VII, Employers have essentially only had two escape routes to refuse to provide an employee who has requested sincere religious accommodation: either prove that providing the accommodation would pose on it an "undue burden" or somehow demonstrate that the employee's religious beliefs were either not sincere or

1

not actually religious beliefs. The discussion below demonstrates that respect for religious beliefs in America remains intact and should remain so.

**I.      Sincerity is Not Usually In Dispute, But In Any Event Is Easily Proven.**

Just a few years ago, attacking an employee's sincerity or asserting that his belief was not actually a *religious* belief was rarely done. However, since the Covid-19 Vaccine Mandates were imposed in 2021 and beyond, and since the Supreme Court in Groff v. DeJoy, 600 U.S. 447, 143 S.Ct. 2279, 2161 L.Ed.2d 1041 (June 29, 2023) significantly impaired Plaintiff's reliance on the "de minimis" standard for proving an accommodation was an "undue burden,"[1] there has been an explosion of cases where employers have attempted to destroy the claims of employees' sincerity regarding their religious beliefs and to recharacterize and diminish their sacred beliefs to "nothing more than medical and personal objections cloaked in religious beliefs," not worthy of legal protection. [2] This is what the Defendant in the present case does in its Motion to Dismiss

---

[1] This "de minimis" standard came from 50 years of misinterpretation of Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977). Many (but not all) courts misconstrued this case to hold that Title VII's religious accommodation requirement  meant that requiring an employer 'to bear more than a de minimis cost' to provide a religious accommodation is an undue hardship."  Groff at 2282.  But, as the Groff court explained regarding undue hardship,  the modifier "undue" means that the requisite burden or adversity must rise to an "excessive" or "unjustifiable" level. Understood in this way, "undue hardship" means something **very different** from a burden that is merely more than *de minimis, i.e.,* "very small or trifling."

[2] See especially Defendant's Motion to Dismiss ("Motion") at 2.  Necessarily, when a topic like the legality of a private entity compelling its employees to submit their physical bodies to an experimental medical procedure results in lawsuits all over the country, there of course will be some variety in the way different courts view and/or analyze these matters.  The fact that there has been an

2

("Motion")[3]. Such overt denigration of religious freedom is contrary to legal history and should not be advanced by this court.

## II. PLAINTIFF SHOULD NOT BE HELD TO A MOTION FOR SUMMARY JUDGMENT STANDARD.

### A. Plaintiff is Not Required to Plead a Prima Facie Case.

First it should be emphasized that Defendant has filed a Motion to Dismiss, not a Motion for Summary Judgment. No discovery has taken place. Courts such as the very recent case of Horne v. Pentastar Aviation, LLC, No. 23-11439 (E.D. Mich. Apr. 12, 2024) make clear the difference:

> Notably, the *Tepper* [4]case that Defendant directs the Court to was a case analyzing a summary judgment motion - not a motion to dismiss brought under Fed.R.Civ.P. 12(b)(6).[5] **That matters because, as this Court recognized in *Golles*[6], a plaintiff is not required to allege**

explosion of these cases evidences how important these issues are to the working public and how contrary and affronting vaccine mandates are to the principles of religious freedom Americans have come to expect just by being an American under the U.S. Constitution and Title VII. Such religious freedom would not encompass the dissection of an employee's religious beliefs as stated in an ordinary way by an ordinary citizen and not fettered with an attempt to fit them into any new legal standards asserted by either Defendants or courts. Simply stated religious beliefs like Plaintiff's should be protected.

[3] See, e.g., Motion at 2,

[4] Tepper v. Potter, 505 F.3d 508, 514 (6th Cir. 2007)

[5] Many of the cases relied on by Defendant are summary judgment cases and therefore inapplicable with respect to what assertions Plaintiff must plead (e.g., Defendant asserts Plaintiff must establish a prima facies case and other issues appropriate only to summary judgment). See e.g., Motion at 9 reference to Jean-Pierre v. Naples Cmty Hospital, 817 F.app'x 822 (11th Cir. 2020), a pre-Groff v. DeJoy unpublished case granting summary judgment on the plaintiff's retaliation claim because he filed an EEOC claim *after* he was discharged. The court did not address whether requesting an accommodation was itself oppositional conduct that would support a retaliation claim or whether any conduct within the EEOC proceeding would support a retaliation claim. See also, Motion at 10.

[6] Golles v. Five Star Store It, LLC, 2023 WL 5833858 at *4-5 (E.D. Mich. 2023

**facts establishing a prima facie employment discrimination claim in order to survive a 12(b)(6) motion to dismiss:**

The Court rejects Defendants' challenge. That is because **a plaintiff "need not" "allege facts establishing a prima facie case of disability discrimination to survive a motion to dismiss under Rule 12(b)(6)."** Morgan v. St. Francis Hosp., 2019 WL 5432041 at * 1 (6th Cir. 2019) (citing Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 510-12 (2002)). In *Swierkiewicz,* the Supreme Court resolved "the question of whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the [*McDonnell Douglas*] framework." Serrano v. Cintas Corp., 699 F.3d 884, 897 (6th Cir. 2012). The **Supreme Court "answered in the negative a**nd explained that **'[t]he prima face case under *McDonnell Douglas* ... is an evidentiary standard, not a pleading requirement**." *Id*.

And Swierkiewicz remains good law after the Supreme Court's decision in Twombly. Serrano, 699 F.3d at 897…

To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), Plaintiff "need only 'give" Defendants "fair notice of what her claims are and the grounds upon which they rest. Morgan, *supra* (quoting Swierkiewicz, *supra*).[7]

---

[7] The Sixth Circuit very recently confirmed that the "*Swierkiewicz* rule" remains intact. Savel v. MetroHealth Sys., ___ F.4th ___, 2024 WL 1190973 at *7 (6th Cir. March 20, 2024) (Explaining that "Swierkiewicz controls" and thus a "plaintiff does not have to allege specific facts establishing a prima facie case of discrimination in their complaint," and finding that the plaintiffs plausibly pleaded that the defendant "failed to give them a reasonable accommodation by denying their requests for a religious exemption to its vaccine mandate."). See Horne, *supra.*, citing Savel v. MetroHealth ___ F.4th ___ 2024 (W 1190973 at 7 (6th Cir. March 20, 2024) (reversing case dismissed for failure to plead prima facie terms). The Horne court also notes that a number of other courts have recognized that a plaintiff need not plead a prima facies case, citing, for example, in accord Smith v. Terminez Pest Control, Inc., 2023 WL 3569127 at *4 E.D. LA 2024) and Witham v. Hershey Co., 2023 WL 8702637 at *3 (D. Minn. 2023).

4

Horne v. Pentastar Aviation, LLC, No. 23-11439, at *12 (E.D. Mich. Apr. 12, 2024) Emphasis added.

### B. Defendant's Attacks On Plaintiff's Sincerity And The Religious Nature Of His Claims Fail Under Established Law.

As explained below, more and more courts are recognizing and refusing to interpret the law to aid in employer attempts to crumble the religious belief protections Americans have long enjoyed.  For example, the court in Carroll v. Tobii Dynavox, Case No. 5:23-CV-00124-HDV-SPx (CD California Order Denying Defendant's Motion for Summary Judgment 04/03/2024) recognized that:

### 1. Precedent cautio[ns] against questioning the sincerity of a Title VII plaintiff's alleged religious beliefs.

Carroll v. Tobii Dynavox, LLC, Doc 59, p. 6) (cite omitted).  Yet questioning the sincerity of Mr. Richards and his religious beliefs is exactly what Defendant Warner does throughout its entire Motion.  Fortunately, there is well-reasoned case authority that has already confronted these very issues.

Much like the present case, Carroll involved a plaintiff with a religiously grounded objection to the Covid Vaccine tied to the use of fetal cell lines. [8] The

---

[8] The use of fetal cell lines in the development of the Vaccine is an objection shared by many Christians as is indicated, in part, by the cases referenced herein.   Fetal cell lines originating from aborted fetuses were used in the development of the Covid Vaccines and implicates Christian beliefs in the sanctity of life and against murder.  Prior to mandates forcing employees to take a hard look at what employers sought to force into their physical bodies without their informed consent, few people knew how vaccines were developed and were unaware that fetal cells were used in the development of any vaccines or drugs.  The threat by employers attempting to force experimental, only briefly tested vaccines into their bodies brought this issue

defendant filed a motion for summary judgment alleging plaintiff claimed no protected religious beliefs—rather, it alleged, her religious objections to submitting to the vaccine mandate were actually grounded in "broad 'secular, scientific or quasi-medication' objections. Carroll, Doc 59, p. 6.

The Carroll court rejected this contention and denied defendant's motion for summary judgment in its entirety, also rejecting its contentions that accommodating plaintiff was an "undue burden." Relying on the reasoning in Keen v. City and County of San Franciso, No. 22-16567 (9th Cir. May 15, 2023), also a case like the instant one where the plaintiff objected to the vaccine on religious grounds due to the vaccine's use of fetal cell lines, the court declared it would not second-guess plaintiff's religious belief and explained the relevant law:

> A religious belief need not be consistent or rational to be protected under Title VII, and an assertion of a sincere religious belief is generally accepted. Thomas v. Review Board, 450 U.S. 707, 714 (1981( (]T]he resolution of [whether a belief is religious] is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.") Doe v. San Diego Unified Sch. Dist., 19 F.4th 1173, 1176 n.3 (9th Cir. 2021) ("We may not….question the legitimacy of [Appellants'] religious beliefs regarding COVID-19 vaccinations" (citing Masterpiece Cakeshop, LLc. v. Colo. Civil Rights Comm'n, 138 s.Ct. 1719, 1731 (2018), *reconsid. en banc denied* 22 F.4th 1099 (9th Cr. 2022); EEOC Guidance, §12-I(A)(2) ("[T]he sincerity of an employee's stated religious belief

---

to light. While Defendant now asserts that Plaintiff "does not object to Ivermectin" and " it is well known that Ivermectin is tested using fetal cells" in an attempt to show Plaintiff's lack of sincerity, the reality is that it is NOT well-known that Ivermectin is tested using fetal cells or how other drugs are developed. Plaintiff's sincerity is in any event a fact question inappropriate for a Motion to Dismiss resolution and it is inappropriate to challenge religious beliefs as having inconsistent components. See Motion at 16. See, discussion infra, and Adeyeye v. Heartland Sweeters,721 F.3d 444 (7th Cir. 2013)

6

is usually not in dispute and is generally presumed or easily established." (cleaned up)).

Carroll, Doc 59 p. 8. In a religious accommodation request much like that of Plaintiff Richards, the court concluded that "Plaintiff's objection to the vaccine…was tied specifically to her religious objection to abortion." Id. The court also noted that the plaintiff voiced other concerns besides the fetal cell line concern, "but t**he Defendant cites no authority for the proposition that an individual seeking a religious accommodation must be careful *only* to mention her religious concerns lest they be invalidated."** Id. at 11 (Emphasis in original.)

### 2. The Belief Or Activity Does Not Even Actually Have To *Be* Religious.

Other case authority has also long established that belief or activity for which a plaintiff requests accommodation does not actually have to *be* religious. The Fifth Circuit has explained:

> A showing of sincerity, however, does not require proof that the religious activity for which accommodation is sought is itself a true religious tenet, but **only that [Plaintiff] sincerely believed it to be religious** in her own scheme of things." Davis v. Fort Bend Cnty., 765 F.3d 480 (5th Cir. 2014).

Further, the Supreme Court of the United States has made clear that,

> **It is not the Court's role to question the religious validity of sincerely-held beliefs, including in the context of claims of religious discrimination in violation of Title VII.**

*See* United States v. Seeger, 380 U.S. 163, 184, 85 S.Ct. 850, 13 L.Ed.2d

733 (1965); Mohamed v. 1st Class Staffing, LLC, 286 F.Supp.3d 884, 901 (S.D. Ohio 2017) ("In such an intensely personal area, of course, the claim of the registrant that his belief is an essential part of a religious faith must be given great weight....**The validity of what he believes cannot be questioned."**)." The Supreme Court further noted in f.n. 5, that:

> In fact, the Equal Employment Opportunity Commission ("EEOC")-the agency charged with the administration, interpretation, and enforcement of Title VII-states that "in most cases, whether or not a practice or belief is religious is not an issue." *Religious Discrimination and Accommodation in the Federal Workplace,* EEOC, (Feb. 2, 2024), [9]

See also, Bass v. T-Mobile U.S., Inc., No. 22-11975 (E.D. Mich. Mar. 27, 2024)

3. **Plaintiff certainly identified his sincere religious beliefs and, even though not required to, has established the elements of a prima facie discrimination case.[10]**

---

[9] https://www.dol.gov/agencies/oasam/civil-rights-center/internal/policies/religious-discrimination-accommodation#:~:text=Religious%20Accommodation,would%20create%20an%20undue%20hardship.

[10] Defendant asserts that to state a *prima facie* claim of religious discrimination based on an alleged failure to accommodate, a plaintiff must allege facts that "(1) he had a bona fide religious belief that conflicted with an employment requirement; (2) he informed his employer of his belief; and (3) he was discharged for failing to comply with the conflicting employment requirement." Telfair v. Federal Exp. Corp., 567 F. App'x 681, 683 (11th Cir. 2014). **Defendant attacks only the first prong of his claim**. All other prongs are both unchallenged and clearly met—even though not required. As discussed herein, Defendant's attempt to urge that Plaintiff's claims are "neither sincerely held religious beliefs nor in conflict with receiving the vaccine" are without merit. See Motion at 11-12.

"A plaintiff's burden to allege a sincere religious belief in conflict with an employment requirement is "fairly minimal,"" Quinn v. Legacy Health, 3:23-cv-00331-JR, at *3 (D. Or. Feb. 13, 2024) (Plaintiff's fetal cell-related religious objections in this case were similar to but less detailed than Plaintiff's in the present case.)

### 4. Other Concerns, Even if Not Religious, Do Not Negate His Religious Claims.

### a. Only ONE Religious Objection Is Needed: Objection to Abortion and Fetal Cells Is Enough.

Like the Defendant in the current case, in Witham v. Hershey Co., 2023 WL 8702637 at *3 (D. Minn. 2023), the Defendant Hershey argued that Witham's objections to the COVID-19 vaccines and Hershey's vaccine policy are not "religious." For this argument, Hershey focused on Witham's " broader allegations regarding, for example, the sanctity of his body and the dangerousness or ineffectiveness of the COVID-19 vaccines." *See, e.g., Id.* ¶¶ 30, 36-37, 40, 42, 55, 75-84. The court answered:

> "The first answer to this argument is that it does not address Witham's abortion-specific concerns. Those concerns are (at least) plausibly religious. **And those concerns mean the claim survives**."

> "The second answer is that determining whether Witham's objections-or which of them-are religious is **a fact-intensive question that seems generally ill-suited for resolution at the motion-to-dismiss stage**. See Love v. Reed[11], 216 F.3d 682, 687 (8th Cir. 2000) (identifying considerations relevant to answering

---

[11] This case also illuminates that " "a belief can be both secular and religious.The categories are not mutually exclusive. The first amendment presumably protects the area where the two overlap." Love v. Reed, 216 F.3d 682, 869 (8th Cir. 2000)  Additionally, a a religious *preference* falls within the ambit of the First Amendment.  Id.

9

whether a belief is religious in nature, as distinct from a belief that is secular or personal). That is not to say this question could never be appropriate for resolution on a Rule 12(b)(6) motion. It is to say that Witham went to some length in his Complaint to tether his objections-including objections that might reasonably be construed as secular or personal-to his Catholic faith. **It is therefore plausible that, for Witham, these concerns are rooted in his faith. That is enough for now.** Witham v. The Hershey Co., 23-cv-1563 (ECT/JFD) (D. Minn. Dec. 15, 2023) at 7-8. Emphasis added.

Plaintiff Richards explanation of his Christian faith is likewise sufficient to overcome Defendant's assertions that his request is not sincere or not sufficiently religious.  There is no known caselaw that holds that asserting non-religious reasons for declining the Vaccine in addition to religious ones cancels the religious ones.  They do not.  There can be many reasons for such an important decision as this, religious, secular and other.  As made clear by the above, if any ONE of them is religious, Title VII applies.  See also. Carroll v. Dynavox LLC. Case No. 5:23-cv-00124-HDV-SPx (C.D. Calif. Order Denying MSJ 04/03/2024) holding that "The undisputed evidence here shows that Plaintiff raised a religiously-grounded objection to COVID-19 vaccinations tied to the use of fetal cell lines…The Court will not second-guess that religious belief.  **It is true that Plaintiff has voiced other concerns about the COVID-19 vaccines, but Defendant cites no authority for the proposition that an individual seeking a religious accommodation must be careful only to mention her religious concerns lest they be invalidated.**  Carroll at 7. Emphasis added.  Other district courts have also found such allegations regarding religious beliefs to be sufficient at this pleadings stage. *See, e.g. Caspensen v. Western Union, LLC*, 2023

WL 6602133 (D. Colo. 2023). _Horne v. Pentastar Aviation, LLC_, No. 23-11439, at *14-15 (E.D. Mich. Apr. 12, 2024).

### 5. Plaintiff's Beliefs Are Most Certainly Religious.

Defendant asserts in its Motion that: "Plaintiff's exemption request stated that he objected to the vaccine because (1) he believes his body is God's temple; (2) he objects to the use of aborted fetus cells; and (3) he believes the vaccine will insert the DNA code into his body and will negatively impact his immune system." Motion at

This alone demonstrates the "fair notice" required by law. However, inexplicably from this synopsis, **Defendant concludes "his objection to the vaccine is nothing more than medical and personal objections cloaked in religious beliefs."** Motion at 2. Defendant's assertion is both offensive and baseless. It is perfectly clear that believing his body is God's temple, Plaintiff was unwilling to defile it with an experimental vaccine that used or relied on morally reprehensible aborted fetal cells or something that could insert foreign DNA material into his God-designed system. Indeed, many Christians have this same concern. See, e.g., Horne, Witham, Carroll, discussed above. Reading Plaintiff's own words regarding how his religion impacts his ability to succumb to the mandated vaccine, as detailed in his Request for Accommodation, illuminates this reality clearly:

> I am a Christian committed to Jesus Christ as my Savior and Lord and following His Word, the Bible.
>
> I am requesting a religious exemption from the COVID-19 vaccines.

11

My sincerely held Christian beliefs prevent me from receiving the COVID-19 vaccines.

The Bible teaches that God created human beings in his image (Genesis1:26-27). This means that human life is sacred, and God created the human body and its human immune system to function as he created it.

The Bible also teaches that human life begins at conception (Psalm 139:13-16).Therefore, **abortion is the taking of a human life and is murder and forbidden by God** (Exodus 20:13).

**The COVID-19 vaccines use fetal cell lines from aborted babies in a part of the process of their creation and development which violates God's will against abortion as described above.**

The COVID-19 vaccines also interfere with the function of the human immune system which God created by inserting genetic code instructions into the cell that does not originate from the DNA in the cell.

Therefore, this process violates God's will for humanity.[12],,, For Christians, all of our religious beliefs are based on the Bible.

**The Bible reveals to us what God's will is and we are committed to believing it and following it on a daily basis. As in all my beliefs, I live by them and express them to others. Also, it has caused me not to receive the COVID19 vaccines.**[13]

## <u>The EEOC Definition of Religious Beliefs.</u>

The Equal Employment Opportunity Commission (EEOC) defines "religious beliefs" to include theistic beliefs (i.e. those that include a belief in God) as well as non-theistic moral or ethical beliefs about right and wrong that are sincerely held with the strength of traditional religious views. In most cases, whether or not a practice or belief is religious is not an issue… [Additionally], In requesting an accommodation,

---

[12] See also Motion at 4.  Actually, there was even more to his Request, since he filled out his Request on the Defendant's online system.  However, copies of online pages are so light as to be unreadable. See Complaint, Exh. E, Doc. 1-6. Regardless, the above exhibits clearly that Plaintiff's religious beliefs prohibit him from taking the mandated vaccine.

[13] *See Motion at 4-5;* Comp. ¶¶ 52-53, Exhibit E (Doc 1-6).

an employee or applicant is not required to use "magic words" (such as indicating that he or she is seeking "an accommodation").”

https://www.dol.gov/agencies/oasam/civil-rights-center/internal/policies/religious-discrimination-accommodation#:~:text=Religious%20Accommodation,would%20create%20an%20undue%20hardship

Additionally, “A court's limited role in determining whether a belief is ‘religious' is the same under Title VII as it is under the Free Exercise Clause of the First Amendment.” Rivera v. Choice Courier Sys., Inc., 2004 WL 1444852, at *7 (S.D.N.Y. June 25, 2004),

Given the above definition, and given all the cases clearly recognizing the Vaccine's use of aborted fetal cell lines as a legitimate religious objection, it is difficult to see how Defendant concludes either than Plaintiff's Objections are not religious or that they don't conflict with a work requirement requiring the injection of the Vaccines. See Motion at 17-18. Given that the aborted fetal cell line objection is well established as religious, and only one religious belief is needed, the rest of Defendant's assertions attempting to mischaracterize and mislabel Plaintiff's religious beliefs re irrelevant.[14]

---

[14] Defendant asserts that Plaintiff's belief that his body is God's temple under Biblical scripture somehow is not religious, nor is his belief that the Vaccine's interference with a person's DNA and immune system because it interferes with God's design of the immune system. To quote the EEOC, “No magic words are required.” It is clear that this regular, non-lawyer American gentleman was attempting to put into words his sincere religious beliefs. If Defendant wants to challenge his description of his beliefs, that should have been done it in the interactive discussion contemplated by Title VII. Having failed to have such a discussion, Defendant should now have to resolve this question of fact before a jury.

13

**6. Defendant Failed In Its Obligation To Have An Interactive Discussion Despite Plaintiff's Efforts To Engage In One.**

Also relevant to Plaintiff's case against Warner is his claim that Warner failed to engage in any interactive discussion.  The interactive discussion contemplated by Title VII is not without purpose, despite the fact that employer after employer during the Vaccine Mandate ordeal brushed it off as if it counted for nothing.  However, it does count.  The Carroll court, *supra.*, denied summary judgment on defendant's multiple challenges to the plaintiff's religious claims regarding her  sincerity, and even its undue hardship claim,[15] concluding that:

> "there are triable issues on the question of whether Defendant engaged in a good faith effort to explore various possible accommodations to Plaintiff's request. Defendant's proffered evidence establishes that it reviewed the possibility of bringing in an additional person to cover Plaintiff's duties, but **there is nothing in the record to show whether Defendant sat down with Plaintiff to review and discuss other options**.  Again, Defendant has failed to show (through declaration or otherwise) that it explored at all whether Plaintiff could perform the tasks with proper PPE, whether its clients would accept such a scenario, or whether Defendant held any discussions with Plaintiff about other options.

Carroll at 10.  Clearly, the Carroll court was recognizing the duty of the employer to have an interactive discussion with the employee requesting a religious accommodation so that an appropriate accommodation could be explored.

**7. Defendant's Duty to Accommodate is Absolute Absent a Showing of Substantial Undue Hardship.**

---

[15] Defendant Warner in the present case has not even attempted an "undue burden" defense in its Motion to Dismiss after using the incorrect "de minimis" standard in its EEOC opposition to Plaintiff's claims.  See Comp. Exh. A, Plaintiff's Rebuttal to Defendant's Position Statement  at 53, 56, 58.

14

Defendant seems aghast that Plaintiff would urge that, under Title VII of the Civil Rights Act of 1964 ("Title VII") *"Defendant was required to grant him a religious exemption from a condition of employment…"* Motion at 1. However, yes, this is exactly the law. Congress made this utter clear[16] by amending Title VII in 1972 to track the EEOC's regulatory language to clarify that **employers must "reasonably accommodate…an employ's…religious observance or practice" unless the employer is "unable" to do so "without undue hardship on the conduct of the employer's business."[17]**

42 USC § 2000e(j). Groff, 143 S.Ct. at 2282. Emphasis added.[18]

### 8. Defendant's Assertion That Plaintiff Failed To Identify A Sincerely Held Religious Belief In Conflict With Defendant's Vaccination Policy Is Baseless.

Apparently recognizing it has no "substantial undue burden" defense, Defendant stretches to dissect every other part of the "sincere religious belief that conflicts with the employer's policy" requirement which used to be so rarely in dispute. Defendant

---

[16] As originally enacted, Title VII did not spell out what it meant by discrimination "because of ... religion." Subsequent regulations issued by the EEOC obligated employers "to make reasonable accommodations to the religious needs of employees" whenever doing so would not create "undue hardship on the conduct of the employer's business." 29 C.F.R. § 1605.1 (1968). When there was a challenge to these regulations in Dewey v. Reynolds Metals Co, 429 F.2d 324, 334 (6th Cir. 1970), Congress acted to clarify its intent.

[17] While Defendant raised in its EEOC Position Statement the "undue burden" defense, it does not now, post-*Groff*, even address that issue.

[18] The Groff Supreme Court further clarified that "undue hardship" does not mean "de minimis" hardship.[18] No, to the contrary, "Title VII requires an employer that denies a religious accommodation to show that the burden of granting an accommodation would result in *substantial* increased costs in relation to the conduct of its particular business." Id. at 2287-2297. Emphasis added.

15

asserts that:

> Plaintiff's exemption request "stated that he objected to the vaccine because (1) he believes his body is God's temple; (2) he objects to the use of aborted fetus cells; and (3) he believes the vaccine will insert the DNA code into his body and will negatively impact his immune system. It is clear from the Plaintiff's original exemption request and his Complaint that his objection to the vaccine is nothing more than medical and personal objections cloaked in religious beliefs. Accordingly, Plaintiff cannot satisfy the first prong of his *prima facie* religious discrimination claim (he held a sincere religious belief *and* that belief conflicted with an employment requirement).

As already explained, Plaintiff has no duty in his Complaint to satisfy the prongs of a "prima facie religious discrimination case."  Notwithstanding, it is clear from even Defendant's synopsis that Plaintiff in fact did allege that he has a sincere religious belief that conflicted with the Vaccine Mandate.

Defendant states in his "Relevant Background" section, Motion at 3,  that  "While remote work was necessary with the onset of the pandemic, it was not a long-term success strategy for Warner Media's business."  However, regardless of Defendant's "long-term success strategy," remote work demonstrated that a workable  and healthy solution was *possible*—especially compared to the vaccine.  Undeniably, the Vaccine did nothing to prevent transmission of Covid. See Exhibits C and D to Complaint.

**9. An Interactive Discussion Would Have Extinguished Plaintiff's Purported Concerns About Plaintiff's Religious Accommodation Request.**

Defendant also appears to complain that, after Plaintiff  provided his  Religious Accommodation Request, "He provided no further information to Warner Media about

16

his religious beliefs. *See* Cplt., ¶ 60." Motion at 5.   It should be noted there is no suggestion that  Defendant ever *asked him* for any additional information about his religious beliefs.  "An employer cannot shield itself from liability….by intentionally remaining in the dark." Adeyeye, *supra,* 721 F.2d at 450.   Nor did it attempt to have with Mr. Richards the required-by-law interactive discussion so that the employee and the Company could work together to jointly determine a way that the employee could continue to work .  See Thomas v. National Ass'n of Letter Carriers, 225 F.3d 1149 (10th Cir. 2000), explaining: "This [religious accommodation] statutory and regulatory framework, like the statutory and regulatory framework of the Americans with Disabilities Act (ADA), involves an interactive process that requires participation by both the employer and the employee. See also, Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 69, 107 S. Ct. 367, 372, 93 L. Ed. 2d 305; Thomas, *supra.,* 225 F.3d at 1155.

Some courts have made clear what is expected of an employer with regard to having an interactive discussion and failure to engage in one is an obvious failure to comply with the law.   The court in Carroll v. Tobii Dynavox (Case 5:23-cv-00124-HDV-SP (CD Calif., Order Denying Motion for Summary Judgment 04/03/24, p. 10-11) found:

> [There are]  triable issues of fact on whether defendant engaged in a good faith effort to explore various possible accommodations to plaintiff's request for accommodation. "Defendant's proffered evidence established that it reviewed the possibility of bringing in an additional person to cover Plaintiff's duties, but **there is nothing in the record to show whether Defendant sat down with Plaintiff to review and discuss other options. Again, Defendant has failed to show…that it explored at all whether Plaintiff could perform the tasks with**

17

> **proper PPE, whether its clients would accept such a scenario, or whether Defendant held any discussions with Plaintiff about other options.,,,"**

In fact, Defendant in the present case went through the entire EEOC process and never once challenged the sincerity or "religiousness" or other supposed defect in his Religious Accommodation Request. Instead, it "reserved the right" to challenge sincerity in case it could find anything. The interactive discussion should have been the place to resolve such issues and perhaps even avoid the instant litigation.

Also of note, Defendant did not raise a shred of proof or even an assertion that could suggest it had any basis to allege a claim that Mr. Richard's beliefs were not sincere—it just reserved a right to do so in case it could possibly come up with anything. See   Comp., Exh. A, Plaintiff's EEOC Rebuttal referencing Defendant's "reservation" of a right to allege Mr. Richards was insincere. As explained in this Rebuttal, such an assertion is retaliatory for raising a religious  request in the first place. "This kind of offensive challenge is the kind of badgering that is a way of retalia ng against an employee for reques ng a religious accommoda on in the first place. "We will call you a liar" is extremely offensive and chilling to one whose religious faith is grounded in honesty and truth telling. Courts and the EEOC have directed that

employers and courts tread lightly in determining the sincerity of an employee's beliefs. [n. 10 Reference to Adeyeye omitted].

  Plaintiff's Complaint States  A Claim Of  Retaliation.

18

Defendant asserts in essence that Plaintiff's retaliation claim fails because it is premised on the fact that Warner Media just enforced its vaccination policy.

However, Defendant ignores multiple facts asserted in the Verified Complaint. As stated above, even Defendant's threat to Plaintiff in the EEOC proceeding to challenge his religion and sincerity was retaliatory in view of both the EEOC and U.S. Supreme Court admonishment regarding challenging an employee's religious beliefs. In short, as the Supreme Court has emphasized that, "it is not for us to say that [the plaintiffs'] religious beliefs are mistaken or insubstantial. Instead, our "narrow function ... in this context is to determine "whether the line drawn reflects "an honest conviction… " Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682 (2014). Notably, until Warner filed its EEOC Positon Statement, no one at Warner ever suggested Plaintiff's religious convictions were an iota less than sincere.

Thus, the comments inferring that there might be reason to suggest Mr. Richard's "honest conviction" is either not honest or not his conviction, especially without any statement whatsoever with regard to the basis on which such an assertion could be made, is nothing more than a baseless attack on his character.[19]

Adeyeye v. Heartland Sweeteners, LLC, 721 F.3d 444, 452 (7th Cir. 2013)--an extremely relevant case discussed in Mr. Richards' Charge Narrative but

---

[19] Apparently, the only thing Defendant could come up with to attack Mr. Richard's sincerity was the fact that his counsel mentioned Ivermectin as a drug suppressed in order to issue the EUA, which requires that there be no other available remedies. "Everybody knows," Defendant says, that "Ivermectin uses fetal cells in its development. This assertion of fact is certainly untrue. Many are learning for the first time how Pharma uses aborted fetal cells frequently.

19

inexplicably ignored entirely by Warner in its Position Statement, makes clear many things relevant here. First, this religious discrimination case makes evident that courts and employers do not get to demand that an employee justify his belief or practice is in fact the employee's own religious belief; it should not entail considering any matters such as whether employee had a true conversion experience or whether the practices are embedded in his cultural and family upbringing." Nor do employers or courts get to determine that one employee's interpretation of his faith is better than another employee's contrary interpretation of that same faith. Accord, Thomas v. Rev. Bd. of Ind. Emp. Sec. Div., 450 U.S. 707, 716 (1981) (" ***Courts are not arbiters of scriptural interpretation.****"). Emphasis added.

This kind of offensive challenge is the kind of badgering that is a way of retaliating against an employee for requesting a religious accommodation in the first place. "We will call you a liar" is extremely offensive and chilling to one whose religious faith is grounded in honesty, integrity and truth telling. Courts and the EEOC have directed that employers and courts tread lightly in determining the sincerity of an employee's beliefs. See above citations, and Adeyeye at 453.

Additionally, Defendant permitting or directing the numerous factors described in the Hostile Work  Environment section of the complaint ¶¶ 127-142 was retaliatory. Further, refusing the accommodation that Plaintiff proposed  regarding co-employee taking over his night shift , where few people are around anyway, was  retaliatory for

Plaintiff's religious beliefs and the opposition to the covid vaccine mandate he had expressed multiple times to management.

Defendant chose Plaintiff to put on the termination list by refusing to provide accommodation to Plaintiff's religious beliefs, or even have an interactive discussion with him to try to find a way to accommodate him.  This choice was retaliation in more ways than one. Plaintiff had in writing opposed the Vaccine Mandate as a violation of the Constitution and his civil rights.  See Comp. Exh. F and G.  Plaintiff challenged the meaning of Defendant's claim of "undue hardship", advised HR of the discrimination and disparate treatment he felt, and,of course, filed an EEOC action when he was fired. In retaliatory response to his complaints and questions, Defendant ignored him, refused to discuss his discrimination claims or accommodation request,  ignored his inquiries regarding legal concerns and actions he felt constituted disparate treatment and were discriminatory, conducted no discrimination, disparate treatment or hostile work environment investigation—thereby participating in and inflaming the hostile work environment, isolated him, withheld work, and in retaliation for protected behavior and speech slow-walked his Religious accommodation request for months without providing any information, thereby causing Plaintiff and his family extreme anxiety and stress.  Of course, Defendant, after all this, ultimately ended his seven and a half year career and, when he filed an EEOC complaint for the religious discrimination he suffered, Defendant threatened to call him a liar in the EEOC proceeding as a response to his asserting his religious accommodation request and engaging in protected speech

21

and activities. [20] Contrary to Defendant's assertions, Plaintiff was not just fired like everyone else who did not take the vaccine.

Additionally, the analysis that Defendant just enforced its policy, Motion at 18-19, should be inapplicable when "just enforcing the policy" interferes with the plaintiff employee's religious beliefs. The religious variable cannot just be extracted as if it does not exist. If the policy was, "Thou must eat a ham sandwich," would a Muslim who was terminated for refusing to eat the ham sandwich be terminated for just not following policy like anyone else? No, the Muslim was terminated for practicing his religious beliefs, which are protected and thus such a termination would be illegal, especially where he advised his employer he could not eat pork-related products for religious reasons and requested a vegetable plate instead. This is essentially what happened to Plaintiff--Plaintiff could not ingest a vaccine that conflicted with his religious beliefs, he suggested multiple reasonable alternatives, his employer suggested none, refused to discuss it, and he was terminated. It is well known that, even though employers implement adverse consequences like termination for a failure to follow their rules, those rules must be bent to accommodate a religious belief. This failure to do so is discrimination due to his religious beliefs.

---

[20] "[a]n activity is protected for the purposes of a [Title VII] retaliation claim if it involves opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment." *Beyene v. Hilton Hotels Corp.*, 815 F.Supp.2d 235, 247 (D.D.C. 2011), *aff'd*, 573 Fed.Appx. 1 (D.C. Cir. 2014) (internal quotation marks omitted). Plaintiff opposed Defendant's Vaccine Mandate and alerted management to the discrimination he felt he was experiencing because of his religious practices in not taking the vaccine, and then filed an EEOC claim upon being terminated for his beliefs and for opposing Defendant's discriminatory activity in detailed in the Complaint.

22

**10.Plaintiff Suffered From A Hostile Work Environment.**

Defendant asserts that Plaintiff alleges no facts to support a claim for hostile work environment—the hostility, it alleges, it based on his unvaccinated status, not his religion.  A review of the Complaint shows this to be untrue. See Comp. ¶¶ 126-142.  Defendant would like to separate Plaintiff's vaccination status from his religion. Motion at 9.  However, like the Muslin terminated for refusing a ham sandwich or a woman bullied for wearing a headscarf, the two are inextricably linked. The hostile work environment detailed by Plaintiff, including that resulting from Defendant's adoption of hostilities bolstered by political speeches described in ¶¶ 90 – 100, 137, definitely occurred in and with regard to Plaintiff's work life and would not have occurred but for his religious beliefs.  Likewise, the Muslim would not refuse to eat a ham sandwich but for his religion, nor would the Muslim woman wear a headscarf but for her religion. There is no question that the hostility Plaintiff  experienced was a direct result of him *practicing his religious beliefs* by abstaining from the vaccine he was being pressured from all sides to take. Plaintiff's religious beliefs were known and his coworkers concluded as a result that he was unvaccinated. See Comp. ¶¶130-131, Motion at 5 and citations therein (noting that, in Plaintiff's Exemption Request, he states that he lives by his Christian beliefs, ***expresses them to others*, and they have caused him not to receive the Covid-19 vaccines**.

**11.  Plaintiff States A Claim For Disparate Treatment**

Defendant complains that Plaintiff fails to state claims of disparate treatment

and "religious discrimination" because they are duplicative of his failure-to-accommodate claim and because *all* employees were subject to Warner Media's COVID Vaccination Policy, irrespective of their religion, and therefore Warner Media's policy was not discriminatory.

However, the question here is: who comprises the comparative group? The comparators are those that do not have religious objections—the ones who are outside the protected class.

Abstaining from vaccination, like a Muslim abstaining from a ham sandwich, is a religious practice. Those who did not have this religious practice, and therefore could follow the policy without objection, were treated better and those that could not follow the policy because they felt compelled to follow their religious beliefs. Rule followers are always treated better than those who have to break the rules for whatever reason. That fact does not eliminate a claim for disparate treatment on the basis of religion. The problem here is that Defendant did not accommodate Plaintiff's religious beliefs and instead forced him into the position of being an ordinary rule breaker, unprotected by law, and then took adverse action against him just as if he just chose to break the rules. This is both unfair and unlawful. Religious beliefs are so highly valued that the law requires the employer to bend the rules for those who have religious beliefs and not treat them like ordinary rulebeakers.

Defendant's assertion that Plaintiff cannot establish discriminatory intent if all

24

employees were treated the same ignores the pled facts.  Religious accommodations are rarely part of an employer's long term strategy. That reality rarely if ever excuses an employer from complying with the law.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully urges the court to DENY Defendant's Motion to Dismiss, order Defendant to file an Answer, set remaining litigation deadlines and grant other appropriate relief to move this case toward a jury trial.

Respectfully submitted this 19th day of April 2024.

Hipes Law LLC

/s/ *Jeanne Bynum Hipes*
Jeanne Bynum Hipes
GA Bar No.: 100575
Counsel for Plaintiff

HIPES LAW, LLC
2475 Northwinds Parkway Suite 200
Alpharetta, GA 30009
Telephone: (678) 867-7006
Fax: (770) 783-5010
Email: counsel@hipeslaw.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, the undersigned hereby certifies that this pleading complies with the font requirements of Local Rule 5.1C because this document has been prepared in Times New Roman, 14-point type.

Respectfully submitted this 19th day of April 2024.

Hipes Law LLC

/s/ *Jeanne Bynum Hipes*
Jeanne Bynum Hipes
GA Bar No.: 100575
Counsel for Plaintiff

26

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SCOTT RICHARDS, | : | |
| | : | CASE NO. 23-cv-05587-JPB-CCB |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WARNER MEDIA LLC, including its | : | |
| parent and successor in interest, | : | |
| WARNER BROS. DISCOVERY, | : | |
| | : | |
| Defendant. | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19th, 2024, I electronically filed the foregoing

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO**

**DISMISS PLAINTIFF'S COMPLAINT** with the Clerk of the Court using

CM/ECF system which will send notification of such filing to the following:

**Emily Haigh, Esq. (Pro Hac Vice)**
Littler Mendelson, P.C.-NY
8th Floor
900 Third Avenue
New York, NY 10022-3298
212-583-9600
ehaigh@littler.com

**Pierre-Joseph Noebes, Esq.**
 Bar No. 537216
pnoebes@littler.com
LITTLER MENDELSON, P.C.
3424 Peachtree Road N.E., Suite 1200
Atlanta, GA  30326.1127

27

Telephone:  404.233.0330
Facsimile:   404.233.2361

Attorneys for Defendant
  Warner Media LLC n/k/a Warner Bros. Discovery, Inc.

Respectfully submitted this 19th day of April 2024.

Hipes Law LLC

*/s/ Jeanne Bynum Hipes*
Jeanne Bynum Hipes
GA Bar No.: 100575
Counsel for Plaintiff

28