IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SCOTT RICHARDS,

    **Plaintiff,**

    **v.**

WARNER MEDIA, LLC,

    **Defendant.**

**CIVIL ACTION NO.
1:23-CV-5587-JPB-CCB**

## NON-FINAL REPORT AND RECOMMENDATION

This matter is before the Court for consideration of the motion to dismiss filed by Warner Media LLC (Warner Media). (Doc. 5). For the reasons that follow, the Court **RECOMMENDS** that Warner Media's motion be **GRANTED in part** and **DENIED in part**.

**I.   BACKGROUND**

    **A.   Procedural Background**

On December 6, 2023, Plaintiff Scott Richards initiated this action against Warner Media asserting the following claims under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, *et seq.*:

- Discrimination (Count I);

- Disparate treatment (Count II);

- Hostile work environment (Count III);

- Failure to accommodate (Count IV); and

- Retaliation (Count V).[1]

(Doc. 1 at ¶¶ 102–68). On March 19, 2024, Warner Media moved to dismiss the

complaint. (Doc. 5).

### B.    Factual Allegations in the Amended Complaint[2]

Richards is a former employee of Warner Media and worked as a

Production Engineer and later as a Senior Broadcast IT Engineer from April of 2014

until his termination in December of 2021. *Id.* at ¶¶ 15–16, 18.

COVID-19 was declared a global pandemic in March of 2020. *Id.* at ¶ 23. On

December 11, 2020, the Food and Drug Administration (FDA) issued an

---

[1] Plaintiff lists the final count in his complaint as "Count VI," even though Plaintiff does not bring a Count V in the complaint. The Court will refer to Plaintiff's retaliation claim as Count V.

[2] The Court draws the following factual allegations from the complaint, (Doc. 1), which are assumed to be true for the purposes of this discussion. Plaintiff's complaint is replete with irrelevant allegations as to the conduct and statements of actors other than Defendant. (*See* Doc. 1 at ¶¶ 34–45, 91–97, 99–100). The Court has done its best to distill the complaint down to the facts that actually matter.

emergency use authorization for COVID vaccines. *Id.* at ¶ 33. The development of the COVID vaccine involved the use of fetal cell lines. *Id.* at ¶ 31.

In the spring of 2021, Warner Media distributed a notice to its employees asking them to share their vaccination status. *Id.* at ¶ 46. In July of 2021, Warner Media communicated that it was requiring "vaccines for U.S. employees whose jobs require them to work in WarnerMedia workplaces." *Id.* at ¶ 48. Defendant's policy mandated that only vaccinated people could use its Turner Sports, Bleacher Report, and Studio floors and office spaces. *Id.* at ¶ 49. Plaintiff received the vaccine mandate notice in August of 2021. *Id.* at ¶ 50. He further alleges that the policy was not uniform, and that each department was permitted to make decisions based on its circumstances. *Id.* at ¶ 49.

Warner Media represented that it would use its best efforts to offer medical or religious accommodations to the mandate. *Id.* at ¶ 51. These accommodations would be granted on a case-by-case basis. *Id.* On August 17, 2021, Plaintiff submitted a religious accommodation request that included the following explanation:

3

I am a Christian committed to Jesus Christ as my Savior and Lord and following His Word, the Bible.

I am requesting a religious exemption from the COVID-19 vaccines. My sincerely held Christian beliefs prevent me from receiving the COVID-19 vaccines. The Bible teaches that God created human beings in his image (Genesis 1:26-27). This means that human life is sacred, and God created the human body and its human immune system to function as he created it. The Bible also teaches that human life begins at conception (Psalm 139:13-16). Therefore, abortion is the taking of a human life and is murder and forbidden by God (Exodus 20:13). The COVID19 vaccines use fetal cell lines from aborted babies in a part of the process of their creation and development which violates God's will against abortion as described above. The COVID-19 vaccines also interfere with the function of the human immune system which God created by inserting genetic code instructions into the cell that does not originate from the DNA in the cell. Therefore, this process violates God's will for humanity.

Similar to the start of the pandemic until present day, remote work accommodations will help ensure the company's safe and healthy workplace. Also, continuing the current approach of mask/gloves wearing and social distancing when on site would also ensure a safe and healthy work environment for others and myself. During the last 18 months, my colleagues and myself have been coming on site following the safety protocols, and there was not one outbreak that was traced back to our group -- other groups that were coming on site did have outbreaks that occurred, but not Sports Central Engineering. When following the safety protocols the company has implemented to keep us safe, Sports Central Engineering is a prime example of how successful we all can be when following the safety protocols of using PPE effectively and social distancing respectfully.

In my opinion, my more than seven-year tenure, specifically the last 18 months, have verified how dedicated and committed I am to the company and keeping all of us safe. For Christians, all of our religious

4

beliefs are based on the Bible. The Bible reveals to us what God's will is and we are committed to believing it and following it on a daily basis. As in all my beliefs, I live by them and express them to others. Also, it has caused me not to receive the COVID19 vaccines.

(Doc. 1-2 at 24 (Exhibit provided by Plaintiff to the EEOC)).[3] Warner Media responded to Plaintiff's accommodation request on November 2, 2021. (Doc. 1 at ¶ 70). Warner Media denied Plaintiff's request, explaining that the essential functions of Plaintiff's role could not be performed remotely and allowing an unvaccinated employee to provide services in Plaintiff's role would present an undue hardship operationally. *Id.* The notice also informed Plaintiff that he was "granted 2 weeks paid notice during which [he] should transition [his] work" and that he would "be paid while placed on leave status for 4 additional weeks." (Doc. 1-7 at 5). On December 18, 2021, Plaintiff was terminated. (Doc. 1 at ¶ 72).

---

[3] When evaluating a motion to dismiss, a court can consider documents attached to the complaint and documents filed in conjunction with a motion to dismiss without converting the motion to one for summary judgment if the documents are central to the complaint and not in dispute. *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (explaining that documents are undisputed when there is no dispute about their authenticity). Here, Plaintiff's accommodation request is central to his claims, and Defendant does not dispute its authenticity in either of its briefs.

II.    **LEGAL STANDARD**

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a plaintiff need not include "detailed factual allegations" in the complaint, the requirement to demonstrate the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

These standards suggest a two-pronged approach for courts evaluating a motion to dismiss a complaint. *See id.* at 678–79; *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). First, "eliminate any allegations in the complaint that are merely legal conclusions." *Am. Dental Ass'n*, 605 F.3d at 1290. While a court must accept the factual allegations in the complaint as true and

6

construe them in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), it need not consider "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678. Nor should it consider "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Second, "where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 679).

### III.   DISCUSSION

Defendant filed its motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 5). Defendant moves to dismiss the complaint in its entirety. *Id.* at 1. Plaintiff filed a response, (Doc. 10), Defendant filed a reply, (Doc. 13), and the motion is now ripe for review.

#### A.   Title VII Discrimination

Title VII prohibits employers from discriminating against their employees because of religion. 42 U.S.C. § 2000e-2(a). Specifically, an employee's religious beliefs cannot be a "motivating factor" for an employment practice, even if other factors also motivated the practice. 42 U.S.C. § 2000e-2(m). "The term 'religion' in Title VII's prohibition against religious discrimination 'includes all aspects of

7

religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observation or practice without undue hardship on the conduct of the employer's business.'" *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1275 (11th Cir. 2021) (quoting 42 U.S.C. § 2000e(j)). Title VII religious discrimination claims may proceed under various theories, including a "traditional" disparate-treatment theory and a failure-to-accommodate theory. *See id.* at 1272. Here, Plaintiff alleges both, and the Court will first address his failure-to-accommodate claim.

### 1.  Failure to Accommodate (Count IV)

To establish a failure-to-reasonably-accommodate claim, "a plaintiff must first set forth a prima facie case by showing that (1) his sincere and bona fide religious belief conflicted with an employment requirement, and (2) his employer took adverse employment action against him because of his inability to comply with the employment requirement or because of the employer's perceived need for his reasonable accommodation." *Id.* at 1275. Although on a motion to dismiss a plaintiff need not establish a prima facie case, "the elements of a *prima facie* case of discrimination are a useful guide" for evaluating whether a plaintiff states a plausible claim. *Hawthorne v. DeJoy*, No. 1:21-CV-3885-SDG-JCF, 2023 WL 5987406,

at *4 (N.D. Ga. June 27, 2023) (internal quotation marks omitted), *adopted by* 2023 WL 5350781 (N.D. Ga. Aug. 21, 2023). Here, Defendant argues that Plaintiff has not adequately alleged that he holds a sincere religious belief that conflicts with Warner Media's employment requirements. (Doc. 5-1 at 11–19).

"To qualify as a bona fide religious belief, the belief must be sincerely held and, in the believer's own scheme of things, religious." *Scafidi v. B. Braun Med., Inc.*, 713 F. Supp. 3d 1231, 1241 (M.D. Fla. 2024) (internal quotation marks and alterations omitted). "An employer need not accommodate a purely personal preference, however." *Id.* (internal quotation marks omitted). In Plaintiff's accommodation request, he explained that:

> My sincerely held Christian beliefs prevent me from receiving the COVID-19 vaccines. The Bible teaches that God created human beings in his image (Genesis 1:26-27). This means that human life is sacred, and God created the human body and its human immune system to function as he created it. The Bible also teaches that human life begins at conception (Psalm 139:13-16). Therefore, abortion is the taking of a human life and is murder and forbidden by God (Exodus 20:13). The COVID19 vaccines use fetal cell lines from aborted babies in a part of the process of their creation and development which violates God's will against abortion as described above.

(Doc. 1-2 at 24 (Exhibit provided by Plaintiff to the EEOC)).

Defendant argues that though Plaintiff couched his accommodation request in religious terms, his objections to the vaccine were really medical,

9

political, social, and scientific in nature—and not based on religion. (Doc. 5-1 at 13–17). In support of its argument, Defendant cites a number of out-of-circuit district court opinions, many of which are no longer good law. *Id.* at 13–18. One such case is *Passarella v. Aspirus, Inc.*, in which the district court dismissed the complaint, concluding that the plaintiffs refused the COVID-19 vaccine "based on their personal judgments about vaccine safety and not for religious reasons" where their accommodation requests were couched "in religious terms, claiming that their decisions had been ratified by prayer." No. 22-CV-287-JDP, 2023 WL 2455681, at *6 (W.D. Wis. Mar. 10, 2023), *rev'd*, 108 F.4th 1005 (7th Cir. 2024). The court reasoned that "the use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion." *Id.* The Seventh Circuit reversed, holding that "[i]f an accommodation request can be read on its face as plausibly based in part on an aspect of the plaintiff-employee's religious belief or practice, that is enough to survive a motion to dismiss." *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1011–12 (7th Cir. 2024) (noting that a "religious" objection can sound in both religious and non-religious terms).[4]

---

[4] To be fair to Defendant, the Seventh Circuit's reversal in *Passarella* took place after Defendant filed its brief in this case. The Seventh Circuit also reversed another Western District of Wisconsin opinion cited by Defendant on similar

Defendant also relies on *Kiel v. Mayo Clinic Health System Southeast Minnesota*, 685 F. Supp. 3d 770 (D. Minn. 2023), *rev'd sub nom. Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894 (8th Cir. 2024), and likens the reasoning behind Plaintiff's accommodation request to that of the *Kiel* plaintiffs. In *Kiel*, the district court found that the plaintiffs failed to adequately connect their refusal of the vaccine to their *religious* beliefs. 685 F. Supp 3d at 783–86 (rejecting, for example, a fetal cell-line objection similar to the one Plaintiff makes in this case). The Eight Circuit, however, reversed, holding that the plaintiffs "plausibly connect[ed] their refusal to receive the vaccine with their religious beliefs." *Ringhofer v. Mayo Clinic, Ambulance*, 102 F. 4th 894, 901 (8th Cir. 2024). The beliefs cited by the plaintiffs in *Kiel* and *Ringhofer* are not unlike those provided by Plaintiff in this case. One plaintiff alleged that "his body is a Temple to the Holy Spirit and [he] is strongly against abortion." *Ringhofer*, 102 F.4th at 901. Another alleged that her "religious exemption was based on opposition to the use of vaccines produced with or tested by aborted baby cells . . . [in part because] [s]he is a Christian and has determined she cannot, consistent with her conscience, take the Covid-19 vaccine, and to do so

---

grounds. *See Bube v. Aspirus Hosp., Inc.*, No. 22-CV-745-JDP, 2023 WL 6037655 (W.D. Wis. Sept. 15, 2023), *rev'd*, 108 F.4th 1017 (7th Cir. 2024).

11

would make her complicit in the killing of the unborn babies from whom the cells used in the vaccines came." *Id.* Ultimately, the Eighth Circuit concluded, "[a]t this early stage, when the complaints are read as a whole and the nonmoving party receives the benefit of reasonable inferences, [the plaintiffs] adequately identif[ied] religious views they believe to conflict with taking the Covid-19 vaccine." *Id.*

Though some of Plaintiff's objections to the vaccine in isolation may sound in things other than religion, taken as a whole they are sufficient to plausibly allege that he has a sincerely held religious belief in conflict with Defendant's vaccine mandate. He made clear that his Christian beliefs prevented him from receiving the vaccine, explained how abortion is forbidden by God, and asserted that the vaccine used fetal cell lines obtained from abortions. At this stage, like they were for the plaintiffs in *Ringhofer* and *Passarella*, the allegations are enough to survive a motion to dismiss.

Defendant does not challenge whether Plaintiff has plausibly alleged the second prima facie element—namely, whether the employer took adverse employment action against him because of his inability to comply with the employment requirement. Plaintiff plausibly alleges this element by asserting that following Defendant's denial for a religious exemption to the vaccine mandate, he

12

was terminated. (Doc. 1 at ¶¶ 70, 72). Thus, the Court **RECOMMENDS** that Defendant's motion be **DENIED** as to Count IV.

### 2.    Disparate Treatment Claims (Counts I and II)[5]

To state a prima facie case of disparate treatment under Title VII, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly-situated individual outside his protected class. *See E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). However, as discussed, at the motion-to-dismiss stage, a plaintiff "need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (internal quotation marks omitted) (holding that the *McDonnell Douglas* burden-shifting framework is

---

[5] Though Plaintiff styles Count I as "DISCRIMINATION BECAUSE OF PLAINTIFF'S RELIGION," it is clear from Plaintiff's allegations that he is bringing a disparate-treatment claim. Disparate treatment and disparate impact are the only two discrimination causes of action under Title VII. *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015). A disparate-impact claim requires the identification of a specific, facially-neutral, employment practice causally responsible for an identified statistical disparity. *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1268 (11th Cir. 2000). Plaintiff does not allege any facts relevant to a disparate-impact claim, so the Court assumes that he intends to bring a disparate-treatment claim based on his termination in Count I.

13

not the governing standard in deciding a motion for default, which requires the court to find a sufficient basis in the pleadings for the judgment entered and is akin to a motion to dismiss for failure to state a claim).

In Count I, Plaintiff cites his termination as the adverse action giving rise to his claim. (Doc. 1 at ¶ 108). In Count II, Plaintiff alleges that "Defendant treated those with religious objection to the Vaccine who sought an exemption or accommodation to the Vaccine Mandate, including Plaintiff, worse than all its similarly situated employees who had no interfering religious beliefs and complied with the Vaccine Mandate." *Id.* at ¶ 118.

Defendant argues that Plaintiff's disparate-treatment claims are duplicative of his failure-to-accommodate claim. (Doc. 5-1 at 9–10). In an unpublished case, the Eleventh Circuit affirmed a district court's finding on a motion for summary judgment that the plaintiff's discrimination claim was duplicative of his accommodation claim. *See Jean-Pierre v. Naples Cmty. Hosp., Inc.*, 817 F. App'x 822, 828 (11th Cir. 2020). There, the plaintiff's discrimination claim was that his employer terminated him because of his sincerely held religious beliefs prohibiting him from working during the Sabbath. *Id.* The court noted that although a plaintiff could plead two separate claims for discrimination—one

14

based on a failure to accommodate and one based on other grounds—the plaintiff had not done so. *Id.* And there is support in this district for dismissing duplicative claims on a motion to dismiss. *See Mitchell v. WellStar Health Sys, Inc.*, No. 1:21-CV-1149-TCB-CMS, 2021 WL 11722979, at *9 (N.D. Ga. Aug. 31, 2021) ("Duplicative claims are those that stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available. To promote judicial economy, a court should dismiss claims that are duplicative of other claims." (citations and internal quotation marks omitted)), *adopted in part by* 2002 WL 35674829 (N.D. Ga. Nov. 10, 2021).[6] The Supreme Court has also explained that discriminating against an employee based on his religious practice "is *synonymous* with refusing to accommodate the religious practice." *See Abercrombie*

---

[6] Westlaw provides the wrong publication date for Judge Batten's order adopting the Report & Recommendation (R&R), and the Westlaw cite for the order does not conform with the normal Westlaw conventions. (Normally, an order entered in 2021 would have a Westlaw cite beginning in 2021). Judge Batten's order was entered in 2021, not 2002. The correct date was retrieved from the Court's docket. *See Rebecca H. Mitchell v. WellStar Health Sys., Inc., et al.*, No. 1:21-CV-1149-TCB-CMS (N.D. Ga. Nov. 10, 2021, Doc. 30, Order adopting in part and denying in part Judge Salinas's R&R). Judge Batten adopted the R&R as to the recommendation to dismiss the duplicative count, i.e., what is relevant to the analysis here.

*& Fitch Stores, Inc.*, 575 U.S. at 772 n.2. And Plaintiff does not respond to this argument in his brief. (Doc. 10 at 24–26).

The disparate-treatment claims are based on the same legal theory as the failure-to-accommodate claims. The gravamen of all of them is that Plaintiff was treated differently, and ultimately terminated, because Defendant failed to accommodate his request to be exempted from the vaccine requirement. Because Defendant's argument is well-founded, and because Plaintiff does not respond to it, the disparate-treatment claims in Counts I and II should be **DISMISSED** as duplicative of the failure-to-accommodate claim in Count IV.[7]

## B.    Title VII Hostile Work Environment (Count III)

Plaintiff brings a claim for hostile work environment under Title VII based on his religion. (Doc. 1 at ¶¶ 126–42). While Plaintiff need not establish a prima facie case of a hostile work environment to survive Defendant's motion to dismiss, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002), the allegations must still meet the plausibility standard of *Twombly* and *Iqbal*. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010) (noting that to state a hostile-work-

---

[7] Because the counts are duplicative, the Court need not address Defendant's argument that the policy was not discriminatory because it applied to all employees. (Doc. 5-1 at 9–10).

environment claim post-*Iqbal*, the employee "was required to allege" five prima facie elements). With that in mind, a plaintiff has to establish these five elements for a prima facie case of discriminatory hostile work environment based on religion: (1) "he belongs to a protected group;" (2) "he has been subject to unwelcome harassment;" (3) "the harassment [was] based on a protected characteristic of the employee;" (4) "the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment;" and (5) "the employer is responsible for such environment under either a theory of vicarious or direct liability." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

Defendant argues that Plaintiff fails to plead that the harassment he experienced was based on his religion. (Doc. 5-1 at 8–9). Instead, Defendant argues, Plaintiff alleges that he experienced harassment on the basis of his vaccination status, *not* his religious affiliation. *Id.* Plaintiff alleges in the complaint that "other employees *guessed* that he was unvaccinated because of his religious beliefs." (Doc. 1 at ¶ 130) (emphasis added). He then alleges a number of unpleasant experiences, including that he endured a public announcement of his assumed unvaccinated status; he no longer had one-on-one contacts with his

17

manager; he was no longer assigned projects; HR ignored his report of a hostile work environment; other teammates ignored him; he feared other coworkers starting an altercation because of his unvaccinated status; and he was terrified of losing his job. *Id.* at ¶ 134.

The problem for Plaintiff is that these allegations about the treatment he received are tied to his status as someone who was not vaccinated, and they are not tied to his religion. To be sure, he tied the two issues together in his accommodation request that he sent to HR, and that claim should proceed. But there is no allegation that Plaintiff's coworkers were creating a hostile work environment based on Plaintiff's religion, as opposed to his vaccination status. And no allegations that any of those coworkers knew that Plaintiff's refusal to be vaccinated was based on his religious beliefs. *See Dixon v. Yellen*, No. 22-CV-3496 (APM), 2024 WL 1831967, at *4 (D.D.C. Mar. 21, 2024) (dismissing a hostile-work-environment claim in the COVID vaccine context because the plaintiff failed to "sufficiently establish that any alleged hostile work environment was based on her religion" and collecting cases). Indeed, the weakness of the claim is highlighted by Plaintiff's allegation that employees "guessed" that he was unvaccinated because

18

of his religious beliefs. (Doc. 1 at ¶ 130). There is simply no allegation that the hostile work environment was based on his religion.

Plaintiff tries to analogize his situation to a "Muslin [sic] terminated for refusing a ham sandwich or a woman bullied for wearing a headscarf," noting that his religious beliefs and vaccination status are "inextricably linked." (Doc. 10 at 24). The analogy fails, however, because Defendant's vaccination policy is not discriminatory on its face—it applies to everyone, Christian or otherwise. Had Plaintiff alleged that his co-workers knew of his religious reasons for refusing the vaccine, the analogy might work. But he has not alleged that and, as a result, he cannot show that the actions he alleged created a hostile work environment were based on a protected characteristic. Accordingly, I **RECOMMEND** that Plaintiff's hostile work environment claim be **DISMISSED.**[8]

---

[8] Defendant also argues that the vast majority of the hostility Plaintiff appears to have endured occurred outside the workplace. (Doc. 5-1 at 8). Maybe so. But he also alleges conduct that occurred within the workplace, (Doc. 1 at ¶ 134), and the motion should not succeed based on this argument.

19

## C.   Retaliation under Title VII (Count V)

Finally, Richards brings a claim for retaliation under Title VII. (Doc. 1 at ¶¶ 163–68). Title VII shields employees from retaliation for certain protected practices. Specifically, the statute provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). A prima facie case of retaliation under Title VII requires the plaintiff to show that (1) he engaged in statutorily protected activity, (2) he suffered a materially adverse action, and (3) there was some causal relation between the two events. *See Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). Although for the purposes of a motion to dismiss a plaintiff need not allege facts sufficient to establish a prima facie case, he must provide enough factual matter (taken as true) to suggest discriminatory retaliation. *See Marshall v. Mayor & Alderman of Savannah*, 366 F. App'x 91, 100 (11th Cir. 2010).

"Statutorily protected expression includes internal complaints of discrimination to superiors, as well as complaints lodged with the EEOC and discrimination-based lawsuits." *Gerard v. Bd. of Regents*, 324 F. App'x 818, 825 (11th

20

Cir. 2009). Title VII equally protects "individuals who have filed formal complaints" and those "who informally voice complaints to their superiors." *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 n.2 (11th Cir. 2002) (internal quotation marks omitted). Plaintiff alleges that he engaged in protected activity by "claiming a religious exemption" to the mandate and by "describing to management the discriminatory nature of the Vaccine Mandate." (Doc. 1 at ¶ 164). Defendant argues that Plaintiff has not alleged that he was terminated because of his religion—rather, Defendant maintains, Plaintiff was terminated because he failed to follow the COVID-19 vaccine policy. (Doc. 5-1 at 7–8). This policy, Defendant argues, existed prior to the accommodation request, and it applied to all employees. *Id.*

First, "merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation." *Leigh v. Artis-Naples, Inc.*, No. 2:22-CV-606-JLB-NPM, 2022 WL 18027780, at *13 (M.D. Fla. Dec. 30, 2022) (quoting *EEOC v. N. Mem'l Health Care*, 908 F.3d 1098, 1102 (8th Cir. 2018)); *see also Smith v. Boston Red Sox*, No. 2:23-CV-68-JES-NPM, 2023 WL 4157362, at *4 (M.D. Fla. June 23, 2023) (dismissing a retaliation claim where the plaintiff alleged that he engaged in protected activity by requesting a religious

21

accommodation to a COVID-19 vaccine mandate). Therefore, the act of submitting an accommodation request to the vaccine mandate does not qualify as protected activity and cannot form the basis of a Title VII retaliation claim. Nevertheless, Plaintiff's communication of his opposition to the mandate can qualify as protected expression.

As to the second element, Plaintiff plausibly alleges a materially adverse action via his termination and Defendant's failure to accommodate.[9] The issue is whether he can show a causal link between his communicated opposition to the vaccine mandate and Defendant's rejection of his accommodation request that led to his termination. Proof of a causal connection for a retaliation claim requires only a showing "that the protected activity and the adverse action were not wholly unrelated." *Debe v. State Farm Mut. Auto. Ins. Co.*, 860 F. App'x 637, 639 (11th Cir. 2021) (quoting *Shotz v. City of Plantation*, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003)). A plaintiff can generally satisfy the "not wholly unrelated" requirement if she shows that "the decision maker was aware of the protected conduct at the time of

---

[9] As discussed with respect to Count III, the Court does not find that Plaintiff was subjected to a hostile work environment, and therefore, the Court will not consider whether he can base his retaliation claim on a hostile work environment.

22

the adverse employment action." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). A plaintiff can also establish causation "by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). However, "mere temporal proximity, without more, must be 'very close[,]'" and a three-to-four-month disparity is too attenuated to show causation. *Id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

Plaintiff alleges that he "engag[ed] in protected speech in describing to management the discriminatory nature of the Vaccine Mandate." (Doc. 1 at ¶ 164). Plaintiff also asserts that "[a]t various times during this unbearable process, including when he first learned of the Vaccine Mandate, Plaintiff brought to HR's and management's attention that he felt the Vaccine mandate was discriminatory, that he was being discriminated against, and that the mandate, [*sic*] was unconstitutional and a violation of Plaintiff's civil rights." *Id.* at ¶ 57.

Accepting all of Plaintiff's allegations as true, Plaintiff received notice of the company vaccine mandate in August of 2021. *Id.* at ¶ 50. Therefore, given that Plaintiff voiced his opposition to the mandate "when he first learned" of it, *id.* at ¶ 57, the first instance of his protected speech took place some time in August of

23

2021. Plaintiff was notified that his accommodation request was denied and that he had been terminated approximately three months later on November 2, 2021. *Id.* at ¶ 70. Though it is close, the Court finds that Plaintiff plausibly alleges a causal link between his protected speech and the adverse action.

In Plaintiff's complaint, he references emails that he sent to several of Defendant's HR representatives voicing his opposition to the vaccine mandate. (Doc. 1 at ¶ 57 (citing (Doc. 1-7)).[10] However, these emails (which Plaintiff alleges are "protected speech") are irrelevant to his retaliation claim because they were sent *after* Defendant made the decision to deny his accommodation request and to terminate his employment. In other words, there is no causal link between these instances of speech and the alleged adverse actions taken by Defendant. In order for Plaintiff's opposition to the mandate to have affected Defendant's decision to terminate him, his opposition to the policy would have had to have been

---

[10] On November 2, 2021, Kristopher Williams, a human resources (HR) representative for Warner Media, informed Plaintiff via email that his accommodation request would not be granted and that his employment would be terminated. (Doc. 1-7 at 5–6). On November 4, 2021, Plaintiff responded that he believed he was "being treated disparately," that Warner Media was "retaliat[ing] against [him] based on [his] Vaccination status," and that the implementation of the vaccine mandate was "a violation of [his] civil rights." *Id.* at 3. On November 18, 2021, Plaintiff emailed Tiffani Davis, another HR representative, that he was being subject to "unconstitutional discrimination." *Id.* at 6.

24

communicated *before* that decision was made. However, because Plaintiff alleges that he communicated his opposition to the policy on multiple occasions leading up to the November 2, 2021 notice, *id.* at ¶ 57, this does not doom his retaliation claim.

At the end of the day, Defendant reads this claim too narrowly by simply arguing that Plaintiff was terminated for not complying with a pre-existing policy. Plaintiff alleges that he complained about the discriminatory nature of that policy when he first learned of it, and he was fired shortly after articulating those concerns. At this stage, the allegations are sufficient to survive a motion to dismiss, and the Court **RECOMMENDS** that the motion dismiss be **DENIED** as to Count V.

## IV.    CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that Warner Media's motion to dismiss, (Doc. 5), be **GRANTED** as to Counts I, II, and III of the complaint and be **DENIED** as to Counts IV and V. In short, the case should proceed on Plaintiff's claims for retaliation and failure to accommodate.

**IT IS SO RECOMMENDED,** this 29th day of January, 2025.

_____

CHRISTOPHER C. BLY
UNITED STATES MAGISTRATE JUDGE

25