UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

SCOTT RICHARDS,

        Plaintiff,

v.

WARNER MEDIA LLC, including its
parent and successor in interest,
WARNER BROS. DISCOVERY,

        Defendant.

CASE NO. 23-cv-05587-JPB-CCB

## PLAINTIFF'S OBJECTIONS
## TO NON-FINAL REPORT & RECOMMENDATION

### PRELIMINARY STATEMENT

This Court issued its Non-Final Report and Recommendation ("RR," Doc. 17) on

January 29, 2025, which denied Defendant's Motion to Dismiss ("Motion," Doc. 5, 5-1)

in part, and recommended Plaintiff's Failure to Accommodate (Count IV) and

Retaliation (Count V)[1] claims proceed.  RR at 25. However, the RR recommended

dismissal of Count I (Discrimination Because of Plaintiff's Religion) and Count II

(Disparate Treatment) as duplicative of Plaintiff's Failure to Accommodate claim.  RR

at 13-16. The RR also recommended dismissal of Count III (Hostile Work

---

[1] Note that Count V was mislabeled as "Count VI" in the Verified Complaint.  Both the RR and these Objections now refer to the Retaliation Claim as Count V. Note also that the RR refers to Plaintiff's Complaint as "the Amended Complaint" on p. 2.  Plaintiff has never amended his Complaint.  Rather, his Complaint has been from the beginning the "Verified Complaint," Doc 1. Plaintiff would like to respectfully reserve an opportunity to file a motion to amend his Verified Complaint if the dismissal of any of Plaintiff's counts is upheld by the court.  See El Hamdani v. Univ. of N.M., 1:23-cv-00066-WJ, at *2 (D.N.M. May 18, 2023) (holding the court need not dismiss claims, even if the complaint is not a model of clarity, and permitting leave to amend is appropriate).

Environment) based on its factual conclusion that Plaintiff's allegations of hostile treatment stemmed [only] from his unvaccinated status rather than his religious beliefs. RR at 18-19.

**PLAINTIFF RESPECTFULLY OBJECTS TO THE RR'S CONCLUSIONS REGARDING COUNTS I, II, AND III.**

I.   **COUNT I:  PLAINTIFF HAS PLED THE BASIS FOR A DISPARATE IMPACT CLAIM.[2]**

    A.   **Legal Standard for Disparate Impact Claims**

- Title VII protects against religious discrimination in many ways, and discrimination claims may proceed under various theories. See RR at 8 citing Baily v. Metro Ambulance  Servs. Inc., 992 F.3d 1265, 1272.[3]  One of the ways Title VII protects is by declaring that an employment practice may not "segregate, or classify employees…in any way which would deprive of tend to deprive any individual of employment opportunities or

---

[2] The RR at 13 n.5 states that Plaintiff does not allege facts relevant to a Disparate Impact claim, so the RR  assumed Plaintiff was making a Disparate Treatment claim. Respectfully, as discussed herein, multiple allegations in the Complaint and its Exhibits support a Disparate Impact claim, as well as other claims, as discussed infra.  Additionally, the facts detailed in Count I also support a Disparate Treatment claim, which is legally distinct from a Failure to Accommodate claim and is set forth in more detail in Count II.  See discussion infra.

[3] Permitting amendment is appropriate if the claims are less than clear. El Hamdani v. Univ. of N.M., 1:23-cv-00066-WJ, at *2 (D.N.M. May 18, 2023).

otherwise adversely affect his status as an employee because of his religion. " 42 USC § 2000e-2(a)(2).  See also, Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), which interpreted this last provision to "proscrib[e] not only overt discrimination but also practices that are fair in form, but discriminatory in operation."  This was the original "disparate impact" claim, later codified as " 42 U.S.C. § 2000e–2(k)." Indeed, as explained throughout Plaintiff's Complaint, former President Biden together with Defendant intentionally divided employees into two groups:  the favored vaccinated and the unfavored unvaccinated. See, e.g., Complaint ¶¶ 92-94, 101.

Plaintiff's Count I is titled, "Discrimination Because of Plaintiff's Religion." While this could technically overarch all the facts and counts alleged in the Complaint, it also, in combination with the other facts alleged in the Complaint and its Exhibits, including certain allegations in Count II, plausibly establishes the foundation for the subcategory of discrimination known as  Disparate Impact.  It also establishes facts supporting a Disparate Treatment claim.  Disparate Treatment is elaborated on in Count II.  Plaintiff objects to the RR conclusion that Plaintiff was asserting only a Disparate

treatment claim in Counts I and II,[4] as well as the RR recommended dismissal of both of these Counts as duplicative of Plaintiff's Failure to Accommodate claim (Count IV).[5]

Under Federal Rule of Civil Procedure 8, Plaintiff need not prove the prima facie elements of a disparate impact claim at this stage but must only allege sufficient facts to state a **plausible** claim for relief. "A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that **discovery will reveal evidence" to support the claim**. Bell Atlantic Corp v. Twombly, 550 U.S. at 556, 570 (2007)." Emphasis added. Stewart v. The Bd. of Trs. for The Univ. of Ala. Sys., 2:22-cv-00203-RDP, at *3-4 (N.D. Ala. Dec. 16, 2022). Courts have emphasized that a motion to dismiss should not be granted unless it is **certain** that Plaintiff would be entitled to no relief under *any* set of facts that *could b*e proven in support of his claim. Conley v. Gibson, 355 U.S. 41 (1957); Twombly v. Bell Atlantic Corp., 550 U.S. 544 (2007). See also, In re Black Geddes, Inc., 16 B.R. 148, 151 (Bankr. S.D.N.Y. 1981) (Emphasis added.). Accord, Jackam v. Hosp. Corp of Am Mideast, 800 F.2 1577, 1579 (11th Cir. 1986.) See also Ciavardone v. Raytheon Techs., 2:23-cv-315-JES-KCD, at *8-9 (M.D. Fla. Oct. 11,

---

[4] The RR states at 13. n.5 states that Plaintiff does not allege any facts relevant to a disparate impact claim. A review of the Complaint reveals a number of facts relevant to this claim, and Plaintiff requests opportunity to file a Motion to Amend the Complaint to clarify this claim if the court finds it appropriate.

[5] See RR at 13 n.5  Also, note that the RR recommends dismissing Plaintiff's "Disparate Treatment claims in Counts I and II" in part because Plaintiff did not address Defendant's argument that Disparate Treatment and Failure to Accommodate are the same" RR at 16.  This is not true, however. Please see Plaintiff's Response to Defendant's Motion, Doc 10 at 24-25.

4

2023) ("Plaintiff alleges that Defendant's actions were an effort to eliminate those with the "wrong" religious beliefs based on a distrust of the religious objections to COVID vaccines. While there are other extraneous allegations in Count One, the Court finds that the allegations in Count One plausibly allege a claim under the portion of Title VII which makes it an unlawful employment practice "to discharge any individual. . . because of such individual's . . . religion . . .." 42 U.S.C. § 2000e-2(a)(1), and nothing more. Accordingly, the motion to dismiss Count One is denied.")

### B. Disparate Impact Elements.

As explained in the case of Phelps v. Lee Cnty, in a motion to dismiss, requiring evidence of disparate impact before discovery has commenced would effectively preclude any plaintiff without access to the records….from having his day in court." Phelps v. Lee Cnty., 2:21-cv-121-JLB-MRM, at *2 (M.D. Fla. Dec. 8, 2021). Thus, the court found that "Mr. Phelps has adequately alleged claims for disparate impact under the ADA and FCRA because he has alleged that Defendant's job application had a greater negative impact on people with a certain disability than it did on people without that disability."  Id.  Accord, Walden v. Raimondo, Civil Action 5:21-cv-304 (MTT) (M.D. Ga. Feb. 14, 2024) (refusing to dismiss a claim where the plaintiff had merely alleged "that a facially neutral policy has a disproportionate

impact on a protected class."   Id.,  Civil Action 5:21-cv-304 (MTT), at *12 (M.D. Ga. Feb. 14, 2024).

### C.  Defendant's "Neutral" Policy Imposed A Disparate Impact On Christians And Others Of Faith.

Title VII prohibits employment practices that have a discriminatory effect, even if they appear neutral. Courts have long held that facially neutral policies that disproportionately burden a protected group constitute unlawful discrimination. "Congress directed the thrust of Title VII to the consequences of employment practices, not simply the motivation." (Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971).) "If an employment practice which operates to exclude [protected individuals] cannot be shown to be related to job performance, the practice is prohibited." (Id. at 432.) The Supreme Court reaffirmed this principle in Lewis v. City of Chicago, 560 U.S. 205, 212 (2010), holding that a discriminatory impact alone is sufficient to state a claim under Title VII.

The court has agreed that the Defendant's policy was neutral on its face. RR at 19.  However, Plaintiff and others of faith were not treated with neutrality.  As stated in the Complaint 82, "Defendant also certainly did not treat its vaccinated employees in the discriminatory way Plaintiff was treated and did not impose adverse actions against them, expose them to a hostile environment, or terminate them."  Further, at ¶ 73, "Plaintiff knows of no employee who was granted a religious accommodation and

believes none were granted." Clearly, those who were vaccinated—and not required to avoid vaccination due to their religious beliefs—were treated better, did not suffer a hostile environment like Plaintiff did, and likely were not fired like Plaintiff was. See e.g., Complaint ¶¶ 81, 82-84, 107, 120, 123 ("Defendant retained [comparator co-worker] Mr. Gilbert, who did not object to the Vaccine, and intentionally terminated Plaintiff because of his religious objection to the Vaccine.")

As stated clearly in multiple ways in the Complaint, **Plaintiff's nonvaccinated status was a direct result of his religious beliefs.** See, e.g., Complaint ¶¶ 52,123, Exh 1-7, Exh F at 3:

> " My family is pro "ethical" vaccinations, however, my Primary Care Physician and my children's Pediatrician have confirmed that there are no "ethical" alternatives available for any of the COVID vaccinations. If there was an ethical alternative, like there are for the all of the other vaccinations my family and I have received, I would be first in line. However, there are none."

While the RR accepts Defendant's attempt to separate Plaintiff's religion from his unvaccinated status, the two are in fact inseparable. Just the way other religious beliefs are inseparable from the religious practice disliked by the employer—including, e.g., the headscarf on a Muslim woman in EEOC v. Abercrombie and Fitch, 575 U.S. 768 *2015) discussed infra. Contrary to the analysis in the RR, in no cases known  involving other religious practices (e.g., facial hair, no work on Sunday) was the religious practice separated from the religion as a way of concluding that no religious discrimination took

7

place.   Indeed, the fallacy of this argument is apparent in just substituting "wearing a head scarf" into sentences that say that the issue was Plaintiff's "unvaccinated status" not his religion. [The Abercrombie defendant was not permitted to escape liability by asserting it was "just the applicant's headscarf" that was intolerable, not her religion. Likewise, employers in cases where facial hair or hairstyle offended the employer's policy were not permitted to escape liability by asserting, "It's just his beard, not his religion."  Likewise, Defendant Warner should not be permitted to escape liability for intentional disparate treatment or hostile work environment by just saying "It's just his unvaccinated status, not his religion."

Defendant's vaccine mandate was not neutral in practice.[6] The policy disproportionately affected religious employees who objected to vaccination on faith-based grounds.  As earlier stated, Plaintiff has alleged that he knows of no employees who were granted religious accommodations, demonstrating the policy's disparate impact. See Complaint ¶ 73. As detailed above and throughout the Complaint, those who complied with the mandate were not subjected to adverse treatment, while religious individuals like Plaintiff were targeted, ostracized, and ultimately terminated. Id.  See also, Complaint ¶¶ 61-63, 82. Neither religious beliefs nor religious practices [like

---

[6] Defendant's Motion at 10 alleges that "Plaintiff was treated the same as individuals with a different religion or no religion at all"—implying the policy was neutral on its face and treated everybody the same.

vaccination avoidance] can be a motivating factor for the adverse treatment of Plaintiff or any other employee with sincere religious objections.  The fact that religion was the motivator is evident from the fact that others unvaccinated for reasons other than religion were permitting various privileges denied to Plaintiff.  See Complaint ¶¶61-63.

The Complaint further establishes disparate impact by detailing that Defendant's "case-by-case" accommodation process resulted in the systemic exclusion of religious employees, with no known successful religious accommodation requests granted and clear better treatment of those with no religious objections to the Vaccine.  (Complaint ¶¶ 50, 51, 67,73, 77, 85, 92, 107, 112, 114 -117,123) The lack of religious accommodations, coupled with the termination of Plaintiff and likely others adhering to their religious beliefs, and the obvious adverse way employees objecting to the policy were treated, substantiates a prima facie case of disparate impact under <u>Ricci v. DeStefano</u>, 557 U.S. 557 (2009).

**II.    PLAINTIFF'S DISPARATE TREATMENT CLAIM IS VIABLE, IS NOT IDENTICAL TO HIS FAILURE TO ACCOMMODATE CLAIM, AND SHOULD NOT BE DISMISSED.**

**A.     <u>Distinction Between Disparate Treatment and Failure to Accommodate</u>**

Disparate Treatment  and Failure to Accommodate are distinct legal theories under Title VII. As stated in <u>Hill v. Foundation</u>:

> A claim of religious discrimination based on disparate treatment is a theory of liability distinct from a failure to accommodate theory and consists of the same prima facie elements required for a racial discrimination claim.

Hill v. Foundation, Civil, No. 4:18cv137, at *55 n.28 (E.D. Va. May 26, 2021), citing

Chalmers v Tulon Co. of Richmond, 101 F.3d 112, 1017 (4th Cir. 1996).

> "The evidentiary burdens placed on the employee under this theory mirror those placed on employees alleging employment discrimination based on race or sex." Chalmers at 1017 (4th Cir. 1996).

Appropriate evidence "might consist of evidence that the employer treated the employee more harshly than other employees of a different religion, or no religion, who engaged in similar conduct. Id. The 4th Circuit further explained:

> Although Title VII similarly classifies religion, sex, and race as illegal considerations, the definition of "religion" in the statute places it in a special category. "Religion" is defined to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. §(s) 2000e(j). **Because this definition includes a requirement that an employer "accommodate" an employee's religious expression, an employee is not limited to the disparate treatment theory to establish a discrimination claim. An employee can also bring suit based on the theory that the employer discriminated against her by failing to accommodate her religious conduct.** See Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977).

> In a religious accommodation case, an employee can establish a claim **even though she cannot show that other (unprotected) employees were treated more favorably or cannot rebut an employer's legitimate, non-discriminatory reason for her discharge**. This is because **an employer must, to an extent, actively attempt to accommodate an employee's religious**

**expression or conduct even if, absent the religious motivation, the employee's conduct will supply a legitimate ground for discharge.**

Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1018 (4th Cir. 1996)

In EEOC v. Abercrombie & Fitch Stores, Inc., supra, 575 U.S. 768, 771 (2015), the Supreme Court held that:

> "An employer may not make an applicant's religious practice, **confirmed or otherwise**, a factor in employment decisions."

(*Id.* at 773.)

Clearly courts have recognized that Disparate Treatment claims [also known as Intentional Discrimination claims] alleging an employer's animus toward a religious belief  or practice are distinct from Failure to Accommodate claims, and all Plaintiff's claims should be allowed to move forward even if, as in Abercrombie, the practice (headscarf wearing)  was only "guessed" or "suspected" to be religious.[7]  There are clear differences between the Disparate Treatment and Failure to Accommodate Claims. Disparate Treatment requires discriminatory animus.  Failure to Accommodate requires no such animus.  It does not even require certainty that the practice at issue is religious. A guess or suspicion is enough.  Abercrombie, supra., 575 U.S. at 770, 773.

---

[7] This is also highly relevant to Plaintiff's dismissed Hostile Work Environment claim, as discussed infra.

11

The RR erroneously concludes that Plaintiff's Disparate Treatment claim is duplicative of his Failure to Accommodate claim. Failure to Accommodate claims focus on an employer's refusal to grant a religious exemption, while Disparate Treatment claims challenge policies that intentionally burden religious employees. And Disparate Treatment and Disparate Impact claims show how the plaintiff and others have been treated worse than other employees outside his protected category. (Complaint ¶¶ 112-125.)

### B. Evidence of Disparate Treatment

The RR merged Counts I and II and eliminated both counts because they were both subsumed by Plaintiff's Failure to Accommodate claim.  However, the Complaint details how Plaintiff's religious objections to the vaccine led to differential and hostile treatment and the different way people of faith like him were treated in comparison to those who asserted no faith-based objections. See, e.g., Complaint ¶¶61-62, 82-83.

Unlike Failure to Accommodate, which does not require proof of discriminatory motive or even that others were negatively impacted by the policy at issue, Disparate Impact requires showing that an employer's policy disproportionately affects a protected class. Disparate Treatment focuses on how the individual plaintiff is intentionally being unfairly treated  due to his religious beliefs and/or practices.  (Hill v.

Foundation for Appalachian Ohio, No. 4:18cv137, at *55 n.28 (E.D. Va. May 26, 2021).) Disparate Treatment in Plaintiff's case involves much more than "just" termination as in Abercrombie. The Muslin Abercrombie applicant did not suffer the mistreatment and hostility that Plaintiff did. The Complaint provides ample support for each claim, and Disparate Impact, Disparate Treatment and Failure to Accommodate claims should all move forward. (Complaint ¶¶ 50, 52, 57.)

The RR erroneously merges and disposes of these claims, despite clear distinctions in precedent and Plaintiff's Complaint. (See, e.g., Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1018 (4th Cir. 1996).

**III. PLAINTIFF'S HOSTILE WORK ENVIRONMENT ("HWE") CLAIM IS WELL SUPPORTED AND BASED ON THE PRACTICE OF PLAINTIFF'S RELIGIOUS BELIEFS**

**A. Defendant's Actions Created a Hostile Work Environment for Plaintiff .**

**1. Refusing the Vaccine Is For Plaintiff Is A Religious Practice.**

Title VII protects "all aspects of religious observance and practice, as well as belief." RR at 7-8, citing 42 USC §2000e(j). The RR dismisses Plaintiff's hostile work environment (HWE) claim by attempting to separate his **unvaccinated status** from his religious beliefs and practices. This reasoning is flawed. Plaintiff's refusal to receive the vaccine was a direct manifestation of his religious convictions, just as wearing a headscarf is manifestation of or a practice emanating from a religious belief for some

Muslims. The hostile treatment Plaintiff endured stemmed from his religious exercise of avoiding any connection with abortion, including injecting the vaccine developed via use of aborted fetal cells.  Without the religious belief, the religious practice of avoiding the vaccine and the necessity of an accommodation would not exist. See Doc 1-7, Exhibit F, quoted supra, showing were it not for the ethics imparted to Plaintiff via his religion, he would be vaccinated.  His unvaccinated status is, as stated in Plaintiff's Response, inextricably linked to his religious beliefs.  Plaintiff's Response, Doc 10 at 25.  It thus is a protected religious practice—one aspect of his religious beliefs.

Notably, the RR did not state that the actions Plaintiff complained of were insufficiently hostile to make a claim.  No, **the sole reason stated for the denial of the HWE claim was that the court made a fact finding that the hostility was due to his unvaccinated status, not his religion.**  See RR at 17-18, Complaint ¶130.  This is contrary to the allegations and inappropriate on a motion to dismiss.  The court should not ignore the contrary complaint assertions to unilaterally decide that the hostility complained of was solely because of his unvaccinated status, rather than his religion. See Complaint ¶83. One cannot have the religious practice (aborted fetal cell avoidance) without the religion (belief that abortion and all related to it is a sin and contrary to God's law.)  As Plaintiff's Request for Accommodation states, he regularly spoke of his religious beliefs and it is easily inferable that many colleagues knew of his religious

14

beliefs and their prohibition of the mandated vaccine.  Certainly, Defendant's management and HR knew.  Complaint ¶ 52, 129.

The facts pled are contrary to the RR's conclusion that all the hostile treatment Plaintiff experienced resulted [just] from his unvaccinated status. (See Complaint ¶¶ 131, 136, 140.)

> **B.**    ***Abercrombie & Fitch* <u>Precedent Supports Plaintiff's Claim That Discrimination Occurs Even if the Defendant Coworkers  only "Guessed" the Plaintiff Was Unvaccinated Due to His Religious Beliefs.</u>**

The Supreme Court's decision in <u>EEOC v. Abercrombie & Fitch,</u> supra.,  is directly relevant to the RR's conclusion that, since the hostilities endured by Plaintiff resulted from persons who only "guessed" his unvaccinated status was because of his religion. RR at 18-19. The <u>Abercrombie</u> Court made clear that an employer can be liable for religious discrimination even if it ***only suspects*** that an employee's conduct is religiously motivated:  " The intentional discrimination provision prohibits certain motives, regardless of the state of the actor's knowledge."  Id. at 73."Motive and knowledge are separate concepts."  Id.

Here, Defendant knew or should have known that Plaintiff's unvaccinated status was due to his religious beliefs.  Plaintiff told HR and Management that the hostile treatment he was experiencing was due to his religious beliefs.  Complaint ¶¶ 129-131-

136,   As he stated in his Request for Accommodation, he "**lives by his beliefs and expresses them to others.**" Complaint ¶52.  Yet, Plaintiff was subjected to workplace hostility, exclusion, and eventual termination because he practiced his religious beliefs by refusing the fetal cell derived Vaccine.  Complaint ¶¶ 128-145.  This is further evident because many employees who were unvaccinated were permitted to carry on as usual.  Complaint. ¶61-63.  Only the religious unvaccinated seeking accommodation suffered  the miserable treatment Plaintiff endured.  Complaint ¶¶ 127 -142.  To conclude before discovery that Plaintiff's mistreatment was not actually tied to his religion is inappropriate, especially when the allegations state the opposite. Cf. RR at 18 with Complaint allegations detailed herein.

The Complaint alleges multiple instances of hostile treatment, including being ostracized by coworkers, ignored by HR, and publicly identified as unvaccinated, to name a few. (Complaint ¶¶ 50, 52, 57, 131, 136, 140.) Courts have consistently held that a plaintiff need only allege facts sufficient to *suggest* that a hostile work environment was plausibly based on religious discrimination. (*EEOC v. Sunbelt Rentals, Inc*., 521 F.3d 306, 315 (4th Cir. 2008).  There certainly are sufficient allegations in the Complaint tying the hostile treatments he suffered to the practice of his religious beliefs, which practice includes refraining from taking a vaccine developed with the use of aborted fetal cells.

16

## IV. Conclusion

Plaintiff has sufficiently pled claims for Disparate Impact, Disparate Treatment, and Hostile Work Environment. The RR errs in recommending dismissal of these claims by incorrectly narrowing the scope of Title VII protections and by inappropriately making a factual conclusion that Plaintiff's hostile treatment was because of his unvaccinated status and not his religion--in the face of Complaint allegations to the contrary. Plaintiff respectfully requests that the Court reject the RR's recommendation to dismiss Counts I, II, and III and allow these claims to proceed, along with his Count IV, Failure to Accommodate, and Count V, Retaliation.  In the alternative, if the court finds that a clearer Complaint is needed to promote justice, Plaintiff requests opportunity to file a Motion to Amend the Verified Complaint.

Respectfully submitted this 12th day of February 2025.

Hipes Law LLC

/s/ Jeanne Bynum Hipes

Jeanne Bynum Hipes
GA Bar No.: 100575
Counsel for Plaintiff

HIPES LAW, LLC
2475 Northwinds Parkway Suite 200
Alpharetta, GA 30009
Telephone: (678) 867-7006

Fax: (770) 783-5010

Email: counsel@hipeslaw.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, the undersigned hereby certifies that this pleading complies with the font requirements of Local Rule 5.1C because this document has been prepared in Times New Roman, 14-point type.

s/ *Jeanne Bynum Hipes*
GA Bar No.: 100575
Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **SCOTT RICHARDS** | **:** | |
| **Plaintiff** | **:** | **Case No. 1:23-cv-05587-JPB-CCB** |
| | **:** | |
| v. | **:** | |
| | **:** | |
| **WARNER MEDIA, LLC,** including | **:** | |
| its parent and successor in interest, | **:** | |
| **WARNERS BROS. DISCOVERY,** | **:** | **JURY TRIAL DEMANDED** |
| **INC.** | **:** | |
| | **:** | |
| **Defendants.** | **:** | |
| | **:** | |
| | **:** | |

_____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 12, 2025, I electronically filed the foregoing

**Plaintiff's Objections to Non-Final Report and Recommendations**

with the Clerk of the Court using CM/ECF system which will send notification of

such filing to the following counsel for Defendant:

**Emily Haigh, Esq. (Pro Hac Vice)**
Littler Mendelson, P.C.-NY
8th Floor
900 Third Avenue
New York, NY 10022-3298
212-583-9600
ehaigh@littler.com

19

**Pierre-Joseph Noebes, Esq.**
 Bar No. 537216
pnoebes@littler.com
LITTLER MENDELSON, P.C.
3424 Peachtree Road N.E., Suite 1200
Atlanta, GA  30326.1127
Telephone:  404.233.0330
Facsimile:   404.233.2361

Attorneys for Defendant
  Warner Media LLC n/k/a Warner Bros. Discovery, Inc.

Respectfully submitted this 12th day of February 2025.

Hipes Law LLC

/s/ *Jeanne Bynum Hipes*
Jeanne Bynum Hipes
GA Bar No.: 100575
Counsel for Plaintiff