**Scott Richards v. WARNER MEDIA   CIVIL ACTION FILE
LLC AND WARNER BROS, INC.     NO. 1:23-cv-05587-JPB-CCB**

## PLAINTIFF'S DISCOVERY DISPUTE POSITION STATEMENT

### TO: The Honorable Christopher C. Bly
### United States Magistrate Judge

**January 5, 2026**

Plaintiff Scott Richards hereby submits this Discovery Dispute Position

Statement for the Court's review in advance of the Court's informal discovery

dispute conference scheduled for January 9, 2026 at 10:00 a.m.. Multiple issues

need resolution.  Plaintiff will here detail Plaintiff's concerns with Defendants'

Discovery Responses.  Separately, Plaintiff will address Defendants' complaints

about Plaintiff's Discovery Responses.

First, Defendants Warner Media, LLC and Warner Bros. Discovery, Inc.

(collectively, "Defendants") have served written responses to Plaintiff's proper

discovery requests that are largely boilerplate and conclusory, and which state

repeatedly that document/information production is conditioned upon entry of a

"mutually agreed upon" protective order. See, e.g., Ex. 4  in virtually every

response; Ex. 5 in virtually every response. Defendants later by email state that

they are not withholding "all" documents on that basis,[1] but regardless of the reason, Defendants blatantly and repeatedly have failed and refused to produce relevant and discoverable information needed for the prosecution of this lawsuit.

Defendants have had months to collect and review responsive materials,[2] yet Plaintiff still has not received the core documents and information needed to prepare for depositions and case disposition. Plaintiff does not seek to extend discovery; Plaintiff seeks immediate production and complete responses.

## I. Background and Good-Faith Efforts to Resolve (Local Rule 37.1)

Plaintiff served Substituted First Interrogatories and First Substituted Requests for Production in June 2025. Due to a pause in discovery and other deadlines in an effort to pursue resolution via mediation, and extensions granted by Plaintiff to accommodate Defendants' new counsel, Defendants' written responses to Plaintiff's June discovery requests finally were served on November 12, 2025.

On November 18, 2025, counsel by telephone conveyed to and discussed with opposing counsel the severe deficiencies Plaintiff observed in Defendants' discovery responses, and conferred about correcting these deficiencies. Plaintiff brought to Defendants' attention, among other things, the Standing Order from

---

[1] See Exh. C_Drummond email dated 12/3/2025. To aid in keeping track of Exhibits, please note that Discovery Pleadings with be marked with a numerical Exhibit Designation (Exh. 1, 2, 3 etc.), which Communications will be marked with an alphabetical Exhibit Designation (Exh A, B, C…).

[2] Plaintiff's initial interrogatories ("Rogs") and requests for production of documents ("RFPs") were served in early to mid June 2025.

Judge Boulee showing that boilerplate objections should not be used and would be disregarded.

Plaintiff memorialized the discussion in writing. Ex. A. Defendants indicated they would review their responses and provide amendments, and the parties scheduled a follow-up call for December 1, 2025. Id.

Defendants thereafter served amended written responses dated December 1, 2025. Exs. B, C. However, disappointingly, the core problems persisted—Defendants' answers remained non-responsive, conclusory, and/or evasive. Some responses provided no answers at all—only objections. All of the responses were barraged with prohibited boilerplate objections, and Defendants continued to say they are withholding production pending a protective order impasse (although, by email of December 3, 2025, opposing counsel asserts not ALL documents are being withheld on this basis. See Ex. C.) See also, e.g., Ex. B.  Plaintiff again put these concerns in writing to opposing counsel on December 2, 2025  and requested that Defendants immediately rectify the problems.  See Ex. B.

While Defendants, out of time and without setting forth what documents are responsive to what discovery requests, have produced some documents, most of the documents produced are documents either previously produced by *Plaintiff,* were generated by Plaintiff's counsel, or are merely Exhibit pages showing no new

information.   In other words, in substantial part, Defendants mere gave Plaintiff

his own documents back.

Absent prompt Court intervention, based on Defendants' inadequate and

obstructive discovery responses, and despite the great length of time this case has

been ongoing (Plaintiff's termination was December 18, 2021), Plaintiff will be

unfairly deprived of discovery necessary to prepare the case for depositions and

trial within the current schedule.

## II. Issues Presented

**A.** <u>**The Protective Order.**</u>  **Defendants are improperly withholding documents and information, are improperly barraging Plaintiff with Boilerplate Objections, say in their discovery responses that they are withholding production pending a protective order, but then say they are not withholding "all" documents in communications, are thereby preventing Plaintiff's and the court's access to the truth, and causing unnecessary trouble and expense.**

Defendants' amended interrogatory and document responses repeatedly state

that responsive materials will be produced only "upon entry of a mutually agreed

upon Protective Order." See, e.g., Ex. 4 at 5 (Rog. No. 3), 7–8 (Rog. No. 6), 13

(Rog. No. 11); Ex. 5 at 4 (RFP Nos. 1–2), 9–10 (RFP No. 12), 16–17 (RFP No.

23). This has functioned as a refusal to produce documents on key subjects—

including the evaluation of Plaintiff's religious accommodation request,

communications about that request, how Defendants treated others requesting

accommodation, the basis for Defendants' undue hardship contentions, and Plaintiff's personnel records, among other important things.

Plaintiff does not oppose an appropriate protective order. The parties' dispute is over the scope of Defendants' proposed protective order—particularly provisions that would allow confidential discovery material to be disseminated broadly inside Defendants' organization. See Exh E.1.  Plaintiff's client cannot accept a protective order that permits mass internal distribution of confidential and sensitive discovery materials.  Cf. Exh. E containing Plaintiff's alternative Protective Order.   Plaintiff has proposed a reasonable limitation: disclosure within Defendants should be restricted to only those employee-witnesses or personnel whose review is reasonably necessary to assist counsel in this litigation (with acknowledgments and access controls), along with counsel, experts, and the Court. Plaintiff proposed a shorter, more direct Protective Order, but it has been rejections.  See Exh E and draft contained therein.

Defendants should not be permitted to use protective-order negotiations as a de facto stay of their Rule 34 production obligations. If Defendants believe additional confidentiality protection is necessary, the Court can enter a reasonable protective order promptly that does not permit wide distribution of Plaintiff's confidential and sensitive materials and direct production to proceed immediately under that order.

**B. Defendants' interrogatory answers are incomplete, conclusory, and rely on improper objections.**

The reality is that **all** of Defendants' discovery responses are non-responsive or evasive. Plaintiff has sent the actual Amended discovery responses served by Defendants so the court can see the breadth of the problem. See Exhs. 4 and 5 for even the Amended Responses. By way of example only, Rog No. 2 asks Defendants to "describe in detail the process used to evaluate requests for religious accommodations to the Vaccine Mandate" and to identify all persons involved. Defendants respond with objections and only identify one supervisor and HR representatives, without describing the evaluation process, criteria, roles of those involved, interactive steps, or decision path. Ex. 4 at 4.

Rog No. 4 seeks the identity of persons involved in denying Plaintiff's request and the reasons and facts relied upon. Defendants answer only that one high-level supervisor consulted HR and that Plaintiff "would have posed a safety risk," without identifying supporting facts or documents. Ex. 4 at 6.

Rog No. 5 seeks the persons involved in the termination decision and the documents/communications supporting it. Defendants state only that Plaintiff's employment ended on December 18, 2021 following denial of his exemption request, and then invoke Rule 33(d) to refer Plaintiff to documents *to be produced*

*later.* Ex. 4 at 6–7.  No documents have thus far been produced that answer this important interrogatory.

Rog No. 6 seeks the facts, documents, and witnesses supporting Defendants' contention that allowing Plaintiff to work remotely or continue prior safety protocols would have imposed an undue hardship. Defendants object that the interrogatory seeks a "narrative response" and cite the Court's Standing Order, then point to unspecified documents to be produced later. Ex. 4 at 7–8.

Rog No. 11 asks for the facts and basis regarding Plaintiff's proposed accommodation (e.g., working remotely and having another employee cover his rare nighttime on-site duties). Defendants respond that the proposal was "not feasible" and "would have imposed an undue hardship," and again refer to documents that will be produced only after a protective order. Ex. 4 at 13.

Rog. 12 asks Defendants to identify the specific job duties Plaintiff could not perform remotely and why. Defendants respond in generalities about in-person interaction and access to facilities and equipment, without identifying the specific essential functions or tasks at issue. Ex. 4 at 13–14.

Defendants also object that responses are "better suited for a deposition" or "violate the Court's Standing Order" because they seek a narrative response. See, e.g., Ex. 4 at 7–8, 13. The Federal Rules expressly authorize interrogatories

7

seeking relevant facts and contentions. Depositions are not a substitute for providing complete written responses and identifying responsive documents.

## C. Defendants have improperly narrowed comparator/accommodation discovery to an unreasonably small universe.

Several interrogatories seek information about Defendants' handling of religious/medical accommodation requests and remote-work practices during the relevant period. Defendants have responded by limiting the inquiry to whether any employee in Plaintiff's *exact* position and reporting to Plaintiff's *exact* manager was granted a religious exemption *between October and December 2021*, and they state they have identified none. Ex. 4 at 9–10.

That limitation is not reasonably tailored to the issues in this case. Plaintiff's claims involve Defendants' accommodation process, the consistency of policy enforcement, and the asserted basis for undue hardship. Plaintiff is willing to accept reasonable narrowing (e.g., limiting to the relevant worksite/division and decisionmaking chain, using anonymized employee identifiers, and applying confidentiality protections) to address privacy and proportionality concerns.  As explained to Defendants orally and in writing, the court in Cox et al v. Gray Media Group, Case: 5:22-cv-00290-KKC-MAS, especially Doc 41 riled 4/01/24 (ED Kentucky, 2024) (another vaccine mandate case against a national TV production company) considered all Defendants' objections and more, and appropriately

8

ordered the information that should be provided the Plaintiffs there.  Cox is likewise an appropriate example for this court.

## III. Relief Requested (No Extension of Discovery)

Plaintiff respectfully requests that the Court enter an order (or provide direction during the informal dispute process) requiring Defendants to:

- Finalize an appropriate protective order immediately, with language limiting disclosure of Confidential material within Defendants to only those individuals whose access is reasonably necessary for this litigation (not mass internal dissemination), similar to the proposal provided by Plaintiff (see Ex. E).

- Produce, within three (3) business days of the Court's direction (or within three (3) business days of entry of the protective order), all non-privileged documents responsive to Plaintiff's First Substituted Requests for Production.

- Comply with Fed. R. Civ. P. 34(b)(2)(C) by stating whether any responsive materials are being withheld on the basis of objections and, if so, the identity of materials withheld.

- Serve **verifie**d supplemental answers to Plaintiff's Substituted First Interrogatories, providing complete factual bases, identifying all decisionmakers and witnesses, and identifying (with specificity) any documents

relied upon (including any Rule 33(d) references). Not all responses to interrogatories produced by Defendants thus far have been unverified.

• If Defendants withhold any responsive documents on privilege grounds, provide a privilege log at the time of production.

- **Plaintiff is not seeking any extension of discovery.** Defendants have already had ample time to collect and review the materials at issue, and Plaintiff seeks only prompt compliance so discovery can proceed on the existing schedule.

- **Plaintiff does request that this court order that no documents not timely produced by Defendants will be allowed to be used by Defendants at any deposition or at trial.**

**IV. Exhibit List.  Exhibits are provided by separate email sent today.**

**Respectfully submitted,**

HIPES LAW LLC

/s/ *Jeanne Bynum Hipes*

Jeanne Bynum Hipes
Ga. Bar No. 100575
Counsel For Plaintiff

10

HIPES LAW LLC
2475 Northwinds Parkway, Suite 200
Alpharetta, Georgia 30009
Main: (678) 867-7006
Fax: (770) 783-5010
Email: counsel@hipeslaw.com