# HIPES LAW LLC

TRIAL COUNSEL
BUSINESS, EMPLOYMENT CONTRACTS AND LITIGATION

**2475 Northwinds Parkway, Suite 200**                                  **Alpharetta, GA 30009**
**Phone:  678-867-7006**                                                        **Fax:  770-783-5010**
 **Email:  Counsel@HipesLaw.com**                                      **Web: www.HipesLaw.com**

March 19, 2026

The Honorable Christopher C. Bly

United States Magistrate Judge

United States District Court, Northern District of Georgia

Atlanta Division

**Re:** Richards v. Warner Media, LLC, et al., Civil Action No. 1:23-cv-05587-JPB-CCB

**Plaintiff's Position Statement for March 24, 2026 Discovery Conference**

Dear Judge Bly:

Plaintiff Scott Richards respectfully submits this position statement in advance of the March 24 conference. The issues before the Court arise from a sustained pattern of discovery obstruction: boilerplate objections, rolling and incomplete productions, repeated failure to verify interrogatory responses, withholding of a privilege log now due for many months, production of the wrong entity's financial records, failure to identify a complete list of 30(b)(6) designees and topics, a continuing demand that Plaintiff surrender litigation-protected recordings before they have served their impeachment purpose, and unnecessarily prolonging the anguish my client and his family have endured throughout this years-long litigation process. Each issue is addressed below. Plaintiff respectfully requests the relief described at the conclusion of this letter.

## I.  BACKGROUND: A DISCOVERY RECORD THAT WARRANTS CLOSE ATTENTION

After being terminated December 18, 2021 and then going through a lengthy EEOC process, Plaintiff filed suit in the Northern District of Georgia in 2023 alleging failure to accommodate his sincerely held religious beliefs and retaliation in violation of Title VII.[1] Discovery opened in May 2025. What followed was not normal litigation friction. Defendants have retained seven different attorneys over the life of this case. They obtained a mediation stay, then replaced counsel and immediately sought an extension when mediation was unsuccessful. The discovery deadline has moved from August 2025 to December 2025, to January 2026, and now to March 23, 2026. After two conferences before this Court in January 2026, Defendants produced some additional materials, but the production remains materially incomplete. Plaintiff—a single employee represented by a solo practitioner—is being asked to try a religious discrimination and retaliation case against a major media conglomerate without the documents and testimony he needs.

## II.  THE RECORDINGS ARE PROTECTED WORK PRODUCT AND SHOULD NOT BE PRODUCED PRE-DEPOSITION

### A.  The Recordings Were Made in Anticipation of Litigation

On the day Plaintiff learned his religious accommodation request was denied and his termination was imminent, he made an audio recording of his conversation with his SVP, Michael Koetter—three levels above him in the corporate hierarchy. Plaintiff has testified under oath during his recent deposition that he made the recording specifically in anticipation of litigation, to preserve what management was saying before memories changed. That testimony is dispositive on the threshold question—the recordings were made in anticipation of litigation. Bahrami v. Maxie Price Chevrolet-Oldsmobile, Inc., No. 1:11-CV-4483-SCJ-AJB, 2013 WL 3800093 (N.D. Ga. July 19, 2013) (Baverman, M.J.), held that a plaintiff who creates work-product material before retaining counsel may still invoke the doctrine, and that recordings made because litigation was anticipated are protected under Rule 26(b)(3). *See also* Otto v. Box USA Group, Inc., 177 F.R.D. 698, 699 (N.D. Ga. 1998) ("It is the law of this District that a plaintiff who creates work-product material before hiring an attorney is still permitted to take advantage of the work-product doctrine.").

The former Fifth Circuit—binding precedent in this Circuit—has stated that "[l]itigation need not necessarily be imminent… as long as the primary motivating

---

[1] Plaintiff went through vigorous efforts by Defendants former counsel to dismiss all his claims, but failure to accommodate and retaliation survived such efforts.

purpose behind the creation of the document was to aid in possible future litigation." United States v. Davis, 636 F.2d 1028, 1040 (5th Cir. 1981). The primary purpose of Plaintiff's recording was plainly to document what his managers said on the day he was told his job would end because of his religious beliefs. It is difficult to imagine a clearer case of anticipation of litigation.

## B.  The Clandestine Nature of the Recording Does Not Vitiate Protection

Should Defendants argue that the surreptitious character of the recording strips it of work-product protection, Bahrami squarely rejected that argument. The court held that work-product protection is not vitiated by the clandestine nature of recordings, noting that the ABA opinion on which earlier cases relied—including Parrott v. Wilson, 707 F.2d 1262 (11th Cir. 1983)—was withdrawn in 2001, and that under new ABA Formal Opinion 01-422, lawyers may make clandestine recordings in jurisdictions where, as in Georgia, one-party consent recording is lawful. Bahrami at *5–06. The recording here was entirely lawful under Georgia law, and no current ABA or Eleventh Circuit authority holds that secrecy alone destroys work-product status.

## C.  Defendants Lack Standing Under Rule 26(b)(3)(C) to Compel Production

Defendants contend that because Mr. Koetter is a high-ranking executive who can bind the company, the recording is effectively "corporate property" that must be turned over. This argument misreads Rule 26(b)(3)(C). That provision grants a right only to "the person" whose "own previous statement" is sought—not to the employer of that person, not to the corporation generally, and not to counsel for the corporation. Bahrami drew exactly this line: it ordered production only to the specific recorded individuals who personally invoked Rule 26(b)(3)(C), and only after their depositions. The court did not order blanket production to the corporate defendant. See Bahrami at *7.[2]

Defendants' reliance on Gissendaner v. Dick's Sporting Goods, Inc., No. 1:23-cv-00444 (M.D. Ala. Jan. 17, 2025), is misplaced for two reasons. First, that case was decided at summary judgment, not in the context of a discovery motion to compel, and no discovery ruling on recordings appears in that opinion. Second, and more fundamentally, whether a supervisor is a "managing agent" for purposes of attributing conduct to a corporation under substantive employment law is a different question from whether a corporation holds a Rule 26(b)(3)(C) right to "the person's own previous statement." That right belongs to the individual, not to the entity. An SVP title alone does not collapse that distinction.

---

[2] Notably, Michael Koetter, the SVP recorded, has not individually claimed entitlement to this recording—only counsel for the corporate Defendants has done so.

3

**D. Even If Any Individual Has Standing, Production Should Be Deferred Until After Deposition**

Even where a recorded person properly invokes Rule 26(b)(3)(C), production may—and here should—be deferred until after that person's deposition, to preserve the impeachment value of the recording and to test deposition testimony against unrefreshed recollection. Bahrami at *7 (ordering production of Price recordings no earlier than twenty-four hours after the conclusion of those depositions, citing the balance between full discovery and a party's entitlement to "unrefreshed recollection of events that gave rise to this litigation" (quoting Stamps v. Encore Receivable Mgmt., Inc., 232 F.R.D. 419, 423 (N.D. Ga. 2005))). Mr. Koetter believed to be scheduled to testify as a 30(b)(6) witness on March 26.[3] Plaintiff has offered to produce the recording after that deposition. Defendants rejected that reasonable compromise out of hand. The Court should adopt the Bahrami framework and order, at most, post-deposition production to any individual who personally requests his own prior statement. The law supports the Court's refusal to order any production of the recording.

**III. THE 30(b)(6) DEPOSITION: TOPICS, DESIGNEES, AND RESERVATION OF RIGHTS**

Plaintiff timely served of March 5th his Rule 30(b)(6) Notice of Deposition to Defendants, along with a list of topics and a list of documents still need despite lengthy discovery efforts. Upon Defendants myriad objections to the topics, Plaintiff then amended his Rule 30(b)(6) notice following not less than three lengthy meet-and-confers. As of March 17, 2026, the parties have still had not resolved Defendants' multiple objections to Plaintiff's topics, and Defendants have still not identified the complete list of designees, advising only that Jeannette Johnson would testify on a "majority" of topics, without stating which ones. The parties are seeking the Court's assistance in nailing down acceptable Deposition topics and ensuring Plaintiff is timely advised which representative will address which topics.

Plaintiff's noticed topics go to the heart of this case: the vaccine mandate as applied to Plaintiff's unit; the accommodation process and Xempt workflow; who made and implemented the termination decision; the undue-hardship analysis; comparator accommodation outcomes; ESI preservation and collection; and the entity-level financial records. All are legitimate. Defendants' rolling objections—offered three months into a discovery period that was itself extended to accommodate their prior delays—do not justify further obstruction.

---

[3] March 26th is after the March 23rd Court-ordered close of discovery. This will be addressed *infra.*

4

Plaintiff is prepared to proceed with the deposition on March 26. However, because Defendants have not yet produced WarnerMedia-entity financial records (discussed below), have not provided a privilege log, and not provided verifications to their interrogatory responses, have not completed their production of requested comparator accommodation data,[4] Plaintiff respectfully requests that the Court order the deposition to proceed under an express reservation of rights: Plaintiff shall be permitted to continue or retake the deposition after those outstanding productions are made, without prejudice and without Defendants later arguing that Plaintiff has "used his one shot." Defendants who delay production cannot then use that delay to cut off further inquiry.

## IV.  THE WRONG FINANCIAL RECORDS: WARNERMEDIA FINANCIALS MUST BE PRODUCED

Plaintiff's failure-to-accommodate and retaliation claims require proof of the financial condition and operational capacity of his actual employer at the time of the events—WarnerMedia, LLC—in March 2020 through December 2021. Defendants have produced financial statements for Discovery, Inc. But Warner Bros. Discovery's own 2022 Form 10-K filed with the SEC confirms that Discovery was treated as the accounting acquirer *after* the April 8, 2022 merger of Warner Media LLC with Discovery, meaning Discovery's pre-merger historical financial statements became the combined company's historical statements. WarnerMedia's standalone financials were not carried forward as the company's historical record.

This matters for the undue-hardship analysis under Groff v. DeJoy, 600 U.S. 447 (2023). Groff clarified that an employer cannot deny a religious accommodation without demonstrating a "substantial increased cost in relation to the conduct of its particular business." General or post-hoc assertions of hardship are not sufficient; the employer must show the burden in relation to *its* specific operations. Discovery's consolidated financials do not establish WarnerMedia's operational capacity, revenue, staffing costs, or business unit economics for late 2021. Defendants cannot satisfy Groff's standard with the wrong entity's numbers.

Accordingly, Plaintiff requests that the Court order Defendants to produce WarnerMedia-entity financial records for 2020–2022, including but not limited to profit-and-loss statements, labor cost data, and any financial analysis or Covid-19 impact statements prepared in connection with the vaccine mandate or the accommodation decision process. If Defendants contend such records no longer exist or were consolidated into Discovery's systems, they must say so unequivocally and explain what happened to those records.

---

[4] Among many other documents Defendants have refused to produce.

5

## V.  NEED FOR AN EXPERT TO ADDRESS FINANCIAL RECORDS, BENEFITS, AND PAY RECORDS

Plaintiff recently obtained pay stubs, benefits data, and related compensation materials that Defendants produced belatedly and in piecemeal fashion. These records require expert analysis to connect compensation history, severance calculations, benefits valuation, and retirement entitlements to Plaintiff's damages. Defendants contend it is now "too late" to name an expert. But the deadline for expert disclosures should be measured from when the documents were actually produced—not from a scheduling order deadline that predated the production. Defendants cannot deliberately withhold financial records through much of the discovery period and then invoke a disclosure deadline to deny Plaintiff the ability to analyze them. Akridge v. Alfa Mut. Ins. Co., 1 F.4th 1271 (11th Cir. 2021) (reversing where discovery restrictions prevented plaintiff from obtaining evidence needed to oppose defendant's positions). Plaintiff requests that the Court authorize Plaintiff to designate a financial/damages expert within thirty days of receipt of the WarnerMedia financial records.

## VI.  PRIVILEGE LOG AND VERIFIED INTERROGATORY RESPONSES ARE LONG OVERDUE

Plaintiff has repeatedly requested (a) a privilege log for all withheld documents and (b) verification of Defendants' interrogatory responses. Neither has been provided. Both are required. Rule 26(b)(5)(A) requires that a party claiming privilege "describe the nature of the documents, communications, or tangible things not produced or disclosed" in a manner that allows the requesting party to assess the claim. Rule 33(b)(3) requires that interrogatories be "answered separately and fully in writing under oath."

The privilege log issue is particularly acute here. Defendants' own discovery responses reveal that counsel was integrated into the accommodation-review process itself—reviewing applications and apparently making or influencing the recommendation that initially favored accommodation for Plaintiff, a recommendation that was then overturned. Where counsel functions as a *business decisionmaker* rather than a legal advisor—actually making or substantially directing the accommodation decision—those communications and documents are not shielded by the attorney-client privilege. United States v. Davis, 636 F.2d at 1043 (former Fifth Circuit: privilege does not protect communications where the lawyer functions in a non-legal business capacity); In re Grand Jury Proceedings, 845 F.2d 574, 580 (5th Cir. 1988) (privilege requires that the communication be "for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding"). Communications seeking or providing

accommodation recommendations as a *business judgment*—not as legal advice—are not privileged, and this Court should require a privilege log that enables in camera review of any claim that the initial accommodation recommendation and its reversal are shielded.

Plaintiff requests that the Court order Defendants to: (1) serve verified interrogatory responses within five days; and (2) produce a complete privilege log within seven days, with a procedure for in camera review of any documents for which Defendants claim privilege arising out of the accommodation decision process. Plaintiff also requests that he be permitted another deposition to explore this information, if necessary, and that it be admissible in response to or in support of any summary judgment motion.

## VII. COX-STYLE COMPARATOR DISCOVERY AND UNDERLYING ACCOMMODATION DECISION DOCUMENTS REMAIN INCOMPLETE

This Court has already been presented with the authority of Cox v. Gray Media Group, Inc., No. 5:22-cv-00290-KKC-MAS (E.D. Ky. Apr. 1, 2024) (Doc. 41), affirmed Doc. 44 (May 23, 2024). Cox confirms that in vaccine-mandate accommodation cases, an employer must produce (a) a structured dataset covering all accommodation requests across the relevant workforce (employee ID, status, title, department, request date, nature, outcome, denial reason, termination date, termination reason) and (b) underlying accommodation-decision documents, including employer-employee correspondence and internal correspondence for each request. Cox's rationale—that limiting production to the employer's own preferred "comparable" silo would improperly accept the employer's characterization—applies directly here.

In response to Plaintiff's Interrogatory No. 7, Defendants have produced their Second Amended Responses a chart of comparator data only for the Tech Ops group supporting Live Sports in the Atlanta campus. No related documents or information relating to the decisions shown were provided. But the evidence is that all Atlanta-office accommodation requests were handled centrally by the same HR and Legal organization under a single company-wide policy. Plaintiff respectfully requests that the Court order Defendants to expand Cox-style production to include all groups in the Atlanta office during the mandate period, subject to anonymization and a protective order, and to produce the underlying non-privileged accommodation decision documents (correspondence and internal communications) for those requests (and the attorney documents to be identified in the privilege log requested that show counsel involvement in these decisions).

7

## VIII.  RELIEF REQUESTED

Plaintiff respectfully asks the Court to order the following:

A. Permit the March 26 Rule 30(b)(6) deposition to proceed outside the March 23rd close of discovery, but with an express reservation of rights allowing Plaintiff to continue or retake it after Defendants complete their outstanding productions (including WarnerMedia financials, the privilege log, and full comparator data), without Defendants asserting that Plaintiff has waived further inquiry;

B. Order Defendants to identify, by topic number, each 30(b)(6) designee and topics to which they will testify no later than 72 hours before the deposition;

C. Order production of WarnerMedia-entity financial records for 2020–2022 within fourteen days;

D. Authorize Plaintiff to designate a financial/damages expert within thirty days of receipt of complete WarnerMedia financials;

E. Order Defendants to serve verified interrogatory responses within five days and a complete privilege log within seven days;

F. Order production of expanded Cox-style comparator data (all Atlanta-office groups, mandate period) and underlying accommodation decision documents, subject to a protective order, within twenty-one days;

G. Deny any demand for blanket pre-deposition production of Plaintiff's recordings; if any individual personally invokes Rule 26(b)(3)(C), order production no earlier than twenty-four hours after the conclusion of that individual's deposition;

H. Confirm the topics in Plaintiff's 30(b)(6) Notice of Deposition are appropriate and direct Defendants to secure testimony regarding all those topics.

I. Preserve Plaintiff's right to seek attorneys' fees and other appropriate relief under Rule 37 for the motion practice and delay necessitated by Defendants' prolonged obstruction of basic merits discovery.

Plaintiff is not asking for special treatment. He is asking for a fair opportunity to finish discovery on the merits. The Federal Rules are designed to produce truthful outcomes through full disclosure, not to reward a party with vastly greater resources that has successfully turned discovery into a contest of endurance. Plaintiff has complied, conferred, revised his requests, and persisted through nearly a year of

8

piecemeal production. He respectfully asks the Court to ensure that this conference results in a clear path to completing discovery on the actual merits of his claims.

Respectfully submitted,

**Jeanne Bynum Hipes**
Counsel for Plaintiff
**HIPES LAW LLC**
2475 Northwinds Parkway, Suite 200
Alpharetta, Georgia 30009
(678) 867-7006
counsel@hipeslaw.com

Enclosure:  Draft 30(b)(6) Deposition Topic List showing objections and additions
            Additional Discovery Deficiency Documents Available Upon Request.

cc:

Alex S. Drummond, Esq. — ADrummond@seyfarth.com
Christopher W. Kelleher, Esq. — CKelleher@seyfarth.com
Grayson Moronta, Esq. — gmoronta@seyfarth.com